Jacques Rene BERENGUER, Petitioner,

v.

Cyrus VANCE, Respondent.

Civ. A. No. 79–0882.

United States District Court,
District of Columbia.

July 13, 1979.

Stanley M. Dietz, Washington, D.C., for petitioner.

John H. E. Bayly, Jr., Asst. U.S. Atty., Washington, D.C., for respondent.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

This matter comes before the Court on petitioner's prayer for a writ of mandamus to compel respondent, the Secretary of State, to revoke the consent of the United States to an expansion of its original warrant of surrender under which petitioner was extradited to Italy to stand trial for certain enumerated crimes. Specifically, petitioner contends that the Secretary's consent to the enlargement of his extradition, given without a judicial hearing, violated his rights under the Constitution, the relevant treaty, and 18 U.S.C. § 3184. The jurisdiction of this Court is properly invoked pursuant to 28 U.S.C. § 1361, in what appears to be a case of first impression.

While incarcerated at the federal penitentiary in Lewisburg, Pennsylvania, serving a sentence imposed in the United States District Court for the Southern District of New York for felonious narcotics activity, petitioner, a French citizen, became the subject of an extradition request served on April 18, 1977, by the Republic of Italy upon the United States. The bases of the extradition request were unexecuted warrants of arrest issued by various Italian courts charging petitioner with homicide and robbery. In compliance with the relevant statutory requirements, 18 U.S.C. § 3184 (1976), a full hearing was held on April 13, 1978, in the United States District Court for the Middle District of Pennsylvania. Following that hearing, the presiding judge made detailed findings of fact and conclusions of law, certified petitioner's extraditability on the charges of murder and aggravated robbery, and ordered him committed to the custody of the United States Marshal pend-

ing either his surrender to Italian authorities or the issuance of an extradition warrant by the respondent. Petitioner was thereafter extradited to Italy, where he was tried on the charges of murder and aggravated robbery.

In mid-November 1978, before disposition of petitioner's case and pursuant to treaty, the Italian Government requested that the United States expand the original order of extradition to include various other extraditable offenses, including illegal possession of a military firearm. *See* Treaty on Extradition, Jan. 18, 1973, United States—Italy, art. XV, 26 U.S.T. 495, T.I.A.S. No. 8052 (providing for expansion of original extradition order on consent of sending country). In support of its request, the Republic of Italy forwarded to the State Department sworn documentation concerning the alleged offenses. This evidence was further supplemented by oral explanation at a meeting held in Washington, D.C., on December 8, 1978, between members of the United States Departments of State and Justice and Italian officials. The following day, petitioner was acquitted of the murder and aggravated robbery charges on which he had been extradited, but he was held in custody in Rome until December 19, 1978, because he was wanted in France on other charges. On December 21, 1978, the State Department consented to petitioner's trial in Rome on the firearms offense only, a determination having been made by the State Department that the Italian authorities had submitted sufficient evidence to establish probable cause on that charge. Petitioner was arrested in Italy for that offense on December 22, 1978. His trial, in which he is joined with more than thirty codefendants, commenced in February 1979, and is presently in progress with a verdict expected on or about July 12, 1979. The instant suit was filed March 26, 1979, and was set down for a full hearing following its transfer to this Judge.

Initially, it is significant to note what petitioner does *not* contest in this proceeding. He does not claim the treaty under which he was extradited is invalid. Nor does he challenge the extraditability of the weapons charge upon which the Italian Republic sought the expansion of his extradition. Rather, his entire argument centers on his asserted right to a judicial hearing, like that required for an initial extradition, before an enlargement of the extradition can be effected. At such a hearing on this charge, petitioner contends, he would seek to challenge his extradition on grounds of mistaken identity and lack of probable cause.

█ Under the due process clause, a defendant is entitled to a hearing before extradition. *Sayne v. Shipley*, 418 F.2d 679, 686 (5th Cir. 1969), *cert. denied*, 398 U.S. 903, 90 S.Ct. 1688, 26 L.Ed.2d 61 (1970). This right is further guaranteed by statute. 18 U.S.C. § 3184 (1976). Under section 3184, any person whose extradition is requested under treaty provisions by a foreign government must be brought before a judicial officer for a determination whether sufficient evidence exists to sustain the charge on which he is sought. *Id.* The appropriate inquiries for a court to make at such a hearing include whether a valid extradition treaty exists between the United States and the requesting country, whether the offense charged is extraditable under the treaty, whether the person brought before the court is the one accused of the crime, and whether probable cause exists to believe that the defendant committed the offense. *Sayne v. Shipley, supra*, 418 F.2d at 685; 6 M. Whiteman, *Digest of International Law* 944-45 (1968). If the court so finds, it certifies these facts to the Secretary of State and issues a warrant holding the defendant in custody pending his surrender. 18 U.S.C. § 3184 (1976). The final decision whether to release the defendant to the foreign government for trial rests with the President, who acts through the Secretary of State. 18 U.S.C. § 3186 (1976); 6 M. Whiteman, *supra* at 1027.

Petitioner does not challenge the fact that all of these safeguards were observed when his extradition was originally sought. At the judicial hearing held at that juncture, the presiding judge found, *inter alia*,

that petitioner was the same person named in the Italian warrants; that a valid extradition treaty exists between the United States and Italy; that the crimes for which petitioner was sought are extraditable under the treaty, being felonies under both Italian and American law; and that sufficient evidence was presented to establish probable cause to believe petitioner had committed the crimes of murder and aggravated robbery in Italy. *In the Matter of The Extradition of Jack René Berenguer,* Misc. No. 78–32 (M.D.Pa. April 13, 1978). While conceding all of this, petitioner nonetheless asserts that he is entitled to an identical proceeding before the original order for his extradition can be expanded to include prosecution for the crime of illegal possession of a military firearm.

▮ It is clear that the concept of extradition has certain well-defined parameters. One such limitation is the "rule of speciality," a principle of international law that prohibits the requesting country from prosecuting or punishing the extradited party without the permission of the surrendering country for any offense committed prior to his extradition, except that for which he was extradited. *Shapiro v. Ferrandina,* 478 F.2d 894, 905 (2d Cir.) (collecting authorities), *cert. dismissed,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973); 6 M. Whiteman, *supra* at 1095, 1100. This doctrine has long been recognized in the United States. *See United States v. Rauscher,* 119 U.S. 407, 415–30, 7 S.Ct. 234, 30 L.Ed. 425 (1886) (analyzing cases and writings on treaties and the rule of speciality). It is significant to note, however, that while the rule restricts the prosecutorial latitude of the requesting country, it also permits a specific exception—the extradited party may be tried for a crime other than that for which he was surrendered *if the asylum country consents.* Such a provision is included in article XV of the treaty under consideration here, which provides in pertinent part:

A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the request-

ing Party for an offense other then that for which extradition has been granted . . . unless:

\* \* \* \* \* \*

3. The requested Party has consented to his detention, trial and punishment for an offense other than that for which extradition was granted . . . ..

While conditions such as this provide an added degree of protection for the extradited party, courts have been clear in their analysis that the rule of specialty is not a right of the accused but is rather a privilege of the asylum state by which its interests are protected. *Shapiro v. Ferrandina, supra,* 478 F.2d at 906; *see United States ex rel. Donnelly v. Mulligan,* 76 F.2d 511, 513 (2d Cir. 1935) (extradition treaties are for benefit of contracting nations; rights of asylum and immunity thus belong to country and not to criminal).

Petitioner, however, contends on several grounds that the United States was required to hold a hearing before an American judicial officer before the Government could consent to the expansion of his extradition. Such a hearing, he argues, is mandated under section 3184. The Court agrees that the statute clearly makes a judicial hearing a prerequisite to an initial extradition, but it is unable to find any authority in that law requiring a second hearing once extradition has been accomplished. Indeed, the plain language of the statute speaks to proceedings *before* the surrender of the defendant to the foreign government. *See* 18 U.S.C. § 3184 (1976). Petitioner also asserts that the treaty itself requires that a hearing be held before expansion of his extradition. This argument is without merit. Article XV of the treaty, which requires that the asylum country's consent be obtained before the extradited party is prosecuted on different charges, is silent as to what, if any, procedure is to be followed by the asylum country in reaching this decision. Petitioner's references to article XIII of the treaty, dealing with emergency applications for extradition, are totally inapposite since this section clearly refers to arrest and detention of the party in the asylum country.

Finally, petitioner contends that he has a constitutional right under the due process clause to a judicial hearing prior to the expansion of his extradition. Although this argument has a degree of merit since petitioner is faced with a potential deprivation of his liberty if he is convicted on the weapons charge in Italy, it too fails. The federal courts have recognized that a defendant's due process right to a hearing in an extradition situation may be subject to certain limitations. *See Sayne v. Shipley, supra,* 418 F.2d at 686 (defendant's due process right to judicial hearing before extradition may be fulfilled by his opportunity to seek review through habeas corpus of administrative decision to extradite). In this case, petitioner has already received one judicial hearing at which he was represented by counsel and at which he testified, vigorously contesting the issues of identity and probable cause. Although the charges on which petitioner was extradited differ from that under which he now stands accused, the Court cannot say that he has been deprived of his due process rights. As long as petitioner, who is a French national, was within the jurisdiction of the United States, this judicial system acted to protect the full panoply of his rights as vigorously as it would the rights of any citizen. Once his extradition was accomplished, however, he became subject to the judicial process of the receiving nation and could no longer claim a right to a judicial hearing on due process grounds. *See Holmes v. Laird,* 148 U.S. App.D.C. 187, 193–95, 459 F.2d 1211, 1217–19 (absence of equivalent constitutional safeguards in foreign judicial system no bar to surrender of American citizens required by treaty to stand trial for criminal offense), *cert. denied,* 409 U.S. 869, 93 S.Ct. 197, 34 L.Ed.2d 120 (1972); *Gallina v. Fraser,* 177 F.Supp. 856, 866 (D.Conn.1959) (regardless of constitutional protections granted persons held for trial in United States courts, such protections cannot be claimed by accused whose ˙ trial and conviction abroad are in accord with foreign law), *aff'd,* 278 F.2d 77 (2d Cir.), *cert. denied,* 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960).

This is not to say that a defendant could never successfully argue that he has a right to a hearing before expansion of an extradition order. If, for instance, a judicial officer refused to find probable cause on a specific charge and the requesting country thereafter sought to obtain the asylum country's consent to try the defendant on that same charge after accomplishing his extradition for a different offense, a court's determination might be very different. Such a situation would raise the possibility of a deliberate effort to evade the safeguards established to protect the defendant's rights. Such is not this case, however, for a thorough study of the transcript of the initial extradition hearing reveals that no weapons offense was ever considered by the court at that proceeding.

Finally, the Court believes that its decision in this case is compelled not only by the foregoing considerations, but also by the separation of powers doctrine. Judge Friendly's observations in *Shapiro v. Ferrandina, supra,* in commenting upon the American practice of refusing to try an extradited party for a crime other than one enumerated in a relevant treaty, seem particularly appropriate here:

> This self-imposed restraint, however, need not necessarily imply that in the converse situation, when courts of this country are examining an extradition request from a foreign nation, we should seek to impose limits on the scope of subsequent prosecution of a person who is to be extradited for at least one crime in any event. *Since such a ruling can only be advisory in character, and in certain circumstances might cause embarrassments to the executive branch in the conduct of foreign affairs, arguably it should be left to the Secretary of State to determine whether to seek to impose any limitations since he alone will have the duty of making a response if the requesting state chooses not to follow our limitations.*[10]

[10] While this argument was made with respect to prosecutions in the United States by Chief Justice Waite in his dissent to *United States v. Rauscher, supra,* 119 U.S. at 434–

436, 7 S.Ct. 234, and was there rejected, such rejection need not be dispositive in the converse case here presented. Quite arguably, the Executive's responsibilities and need for flexibility are greater when the extradition is to another country, in which the sole effective remedies are diplomatic ones, than in the case of extradition to this country where the courts can see to it that the Executive lives up to our international obligations.

478 F.2d at 906 (emphasis supplied).

While the judiciary has been given a uniquely important role to play in the American extradition process, that role is limited to the making of a determination of probable cause. The ultimate decision to surrender the defendant lies with the executive branch, and any objections to the treatment of an extradited party must be made through diplomatic channels. The very fact that extradition is accomplished under treaty indicates that it is most properly considered to be part of the foreign affairs responsibility of the President. In all but the most egregious circumstances, the role of the court must come to an end once the defendant is transported to the foreign country to stand trial. For this Court to find otherwise and to insist that an extradited defendant must have a hearing before an American judicial officer prior to the Government's consenting to an expansion of extradition would be to intrude in affairs that are traditionally, and appropriately, considered to be exclusively within the province of the executive branch.

The petition for a writ of mandamus shall be dismissed. An appropriate Judgment accompanies this memorandum opinion.