**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**David NAJOHN, Defendant-Appellant.**

**No. 84–1266.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1985.

Decided April 1, 1986.

---

Mark Zanides, San Francisco, Cal., for plaintiff-appellee.

James F. Hewitt, A.J. Kramer, San Francisco, Cal., for defendant-appellant.

Before GOODWIN and WALLACE, Circuit Judges, and STEPHENS,* District Judge.

PER CURIAM:

Najohn moved before trial to dismiss his indictment on the grounds that his prosecution and punishment would violate the specialty doctrine of federal extradition law. The district court denied his motion, and Najohn appealed. The government argued that the district court's decision could not be appealed under the collateral order doctrine. The collateral order question has

become moot, and we affirm on the merits because Switzerland has waived the specialty rule in this case.

### I.

### Background

Najohn was indicted in the Eastern District of Pennsylvania and charged with interstate transportation of stolen property in violation of 18 U.S.C. § 2314 (1982), and a warrant for his arrest was issued. The United States Embassy in Berne, Switzerland, requested Najohn's extradition to the United States. Swiss authorities arrested Najohn, a Swiss court ordered his extradition to face the Pennsylvania charges, and Najohn was transported from Switzerland to Pennsylvania. Najohn pleaded guilty to one count of the Pennsylvania indictment and received a four-year sentence.

While serving his sentence, Najohn was indicted in the Northern District of California and charged with interstate transportation of stolen property, *see* 18 U.S.C. § 2314 (1982), receipt of stolen property, *see* 18 U.S.C. § 2315 (1982), and conspiracy, *see* 18 U.S.C. § 371 (1982). Najohn moved to dismiss the indictment on the ground that his trial on the California charges was barred by the extradition treaty between the United States and Switzerland, and by specific language in the Swiss court's extradition order. The district court found that the Swiss government had waived the treaty language relied on by Najohn and, on that basis, denied Najohn's motion to dismiss the Northern District of California indictment.

Najohn appealed, contending that the district court order denying his motion to dismiss was an appealable interlocutory order. While the appeal was pending, Najohn entered a conditional guilty plea saving his right to appeal on the specialty question. We have jurisdiction under 28 U.S.C. § 1291 (1982).

* The Honorable Albert Lee Stephens, Jr., United States District Judge, Central District of California, sitting by designation.

## II.

### Specialty

Specialty is a doctrine based on international comity. Because the surrender of the defendant requires the cooperation of the surrendering state, preservation of the institution of extradition requires that the petitioning state live up to whatever promises it made in order to obtain extradition. Thus, the doctrine of specialty is not truly an exception to the rule of *Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886), that courts will not inquire into how personal jurisdiction was obtained over a defendant. Rather, the concern is with satisfaction of the petitioning country's obligations. *See Fiocconi v. Attorney General*, 462 F.2d 475, 480 (2d Cir.), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972). Because of this, the protection exists only to the extent that the surrendering country wishes. *See Shapiro v. Ferrandina*, 478 F.2d 894, 906 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). However, the person extradited may raise whatever objections the rendering country might have. *United States v. Rauscher*, 119 U.S. 407, 419, 7 S.Ct. 234, 240, 30 L.Ed. 425 (1886).

In this case, the treaty of extradition provides,

> No person surrendered by either of the Contracting States to the other shall be prosecuted or punished for any offense committed before the demand for extradition, other than that for which the extradition is granted, unless he expressly consents to it in open Court, which consent shall be entered upon the record, or unless, having been at liberty during one month after his final release to leave the territory of the State making the demand, he has failed to make use of such liberty.

Treaty on Extradition, United States-Switzerland, May 14, 1900, 31 Stat. 1928, T.S. No. 354, Art. IX. The Swiss court order is to the same effect.

The doctrine of specialty would ordinarily protect Najohn from being tried for offenses other than the one for which he was originally extradited. The doctrine, however, contains a specific exception. "[T]he extradited party may be tried for a crime other than that for which he was surrendered *if the asylum country consents."* *Berenguer v. Vance*, 473 F.Supp. 1195, 1197 (D.D.C.1979) (emphasis in original); *see* M. Bassiouni, *International Extradition* ch. VII, § 6–3, at 6–11 (1983) (specialty does not prevent requesting state from trying defendant for offense not listed as a basis for extradition if requested state consents). The government claims that the Swiss government has waived the principle of specialty. Najohn argues that the purported waiver is insufficient.

The only authorizations for this prosecution are a letter from the Magistrate of the District of Zurich requesting prosecution and a letter from the Swiss Embassy to the United States asking for prosecution and agreeing that the principle of specialty was suspended. Najohn argues that these are insufficient because the treaty, requiring that prosecution only be for the crimes for which extradition was sought, binds the United States regardless of the consent of the Swiss authorities.

The treaty binds the two countries to surrender fugitives to one another under certain circumstances. It does not purport to limit the discretion of the two sovereigns to surrender fugitives for reasons of comity, prudence, or even as a whim. Nor does it purport to describe the procedural requirements for extradition incumbent on the rendering country. While constitutional limitations on extradition exist in this country, none is relevant in this case. The Supreme Court has explicitly rejected the contention that a treaty of extradition creates a right not to be taken from the asylum country except in accordance with the provisions of the treaty. *See Ker v. Illinois*, 119 U.S. 436, 441–42, 7 S.Ct. 225, 227–28, 30 L.Ed. 421 (1886).

The original request for the extradition of Najohn was made and granted pursuant to the treaty. Now, for reasons of its own, the Swiss government has decided that further prosecution of Najohn is not undesirable. Had Najohn been surrendered in Switzerland for prosecution for these crimes, the doctrine of specialty would not

apply and further prosecution would be accepted. Najohn suggests no reason why the requirements for Swiss consent to prosecution for these crimes should be more rigorous now that he is already in United States custody.

Najohn also argues that the statements contained in the documents approving further prosecution are insufficient because, unlike the order of extradition, they are not court-approved. In view of the absence of any effort by the defendant to obtain a Swiss judgment prohibiting Swiss consent to further prosecution, we are justified in regarding the statement of the executive branch as the last word of the Swiss government. *Cf. Fiocconi*, 462 F.2d at 481 (absence of objection sufficient consent where additional crimes were similar to one for which extradition was obtained). To do otherwise would ignore the precept that courts do not intervene in foreign affairs. While the specialty doctrine, conceived as a means for enforcing American treaty obligations, is a recognized exception to this doctrine, there is no reason to extend this exception to require courts to initiate an investigation into the workings of foreign governments.

AFFIRMED.