**UNITED STATES of America**

v.

**Carlos Enrique LEHDER–RIVAS.**

**No. 81–82–Cr–J–12.**

United States District Court, M.D. Florida, Jacksonville Division.

Aug. 31, 1987.

Robert W. Merkle, U.S. Atty., Ernst D. Mueller, Asst. U.S. Atty., Jacksonville, Fla., for the Government.

Edward R. Shohat, Miami, Fla. and Jose M. Quinon, Coral Gables, Fla., for defendant Lehder.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT LEHDER'S MOTION TO ENFORCE THE RULE OF SPECIALITY, ETC.

MELTON, District Judge.

This cause is before the Court on Defendant Lehder's Motion to Enforce the Rule of Speciality and Abate Prosecution on Count XII of the Indictment, filed June 19, 1987, and argued before this Court on July 21, 1987. Count XII charges Lehder with engaging in a continuing criminal enterprise (CCE) in violation of 21 U.S.C. sec. 848. Lehder alleges, in substance, that the Decree of Extradition issued by the Government of Colombia does not authorize prosecution for the CCE charge. Lehder relies on the principle of international law known as the "rule of speciality" to

support his motion to abate prosecution. The government filed a response opposing the motion on July 6, 1987. Lehder replied to the government's response on July 14, 1987, and (by leave of the Court) the government submitted a rejoinder to Lehder's reply on August 14, 1987.

Defendant Lehder is a citizen of Colombia. After his indictment by a grand jury in this country, the government sought extradition of Lehder to stand trial on eleven of the twelve charges in the indictment.[1] Pursuant to the terms of the Extradition Treaty Between the United States and the Republic of Colombia, signed September 14, 1979, and the domestic law of Colombia, the Colombian Supreme Court of Justice reviewed the extradition request. Lehder was represented by counsel before that tribunal, raising several objections to the extradition request. On November 29, 1983, the Colombian Supreme Court issued a "favorable judgment" on Lehder's extradition "in accordance with the request formulated by the Government of the United States of America." The Colombian Supreme Court described its role in the extradition process in these terms:

The action taken by this Division of the Court is applied briefly to make a comparison between the documents provided by the requesting state and the rules or regulations of the applicable agreement, or secondarily, with respect to internal laws, to determine whether there is total compliance with these, in which case, it will render favorable judgment for extradition, or that it does not comply, and then will render an adverse opinion.... It is undeniably clear and necessary that the government has power to grant or deny the requested extradition when the judgment of the Court is favorable,—but it involves a political decision as to being independent and related to considerations of sovereignty or national interest; only in this way are the judicial and executive domain respected so that they remain harmonious in the decision over such matters.

1. Count Seven of the original indictment was withdrawn by the government with the permission of this Court. The request for extradition included documentation of this fact.

Act No. 100, English Translation, at 11–13 (Defendant's Exh. B). Thus, the Colombian Supreme Court forwarded the extradition request to the President of Colombia for final action. In Resolution No. 79 of May 8, 1984 (Defendant's Exh. C), the Colombian President "[c]oncede[d] the extradition of Colombian citizen Mr. Carlos Lehder Rivas, requested by the Embassy of the United States of America in Colombia, in conformance with that set forth as the basis for this judgment." English Translation, at 9. Lehder's counsel petitioned the President to reconsider this determination. The Colombian President refused to reverse the earlier decree. In the course of the second opinion, he noted:

> In the past, the government had denied requests for extradition of Colombian citizens to the United States and in the respective orders has analyzed the circumstances of having so ordered and the rights which made it adopt such measures. But in the case in question, we find before us circumstances completely different, as Mr. Carlos Lehder Rivas is accused in importing cocaine to the United States, of possession of it with the intent to distribute it in North American territory and of participating in continuous criminal enterprise of narcotic traffic.

Resolution No. 101 of June 8, 1984, English Translation, at 4. Thereafter, Lehder was arrested, sent to the United States, and turned over to federal authorities by an "Act of Surrender of Mr. Carlos Lehder Rivas by the Authorities of the Republic of Colombia, to the Authorities of the United States of America, in Compliance with Resolutions 79 of May 8, 1984, and 101 of June 8 of the Same Year."

Lehder poses two distinct arguments. He claims: (1) the Colombian Supreme Court's opinion approving the extradition request does not expressly mention the CCE charge, thereby excluding the charge from the court's "favorable judgment"; and (2) the CCE charge concerns an offense that does not qualify for extradition under the Extradition Treaty Between the United States and the Republic of Colombia (hereinafter "Treaty"). The government disputes these arguments, characterizing them as misinterpretations of the relevant documents.

■ The rule of speciality is included in the Treaty in Article 15, which provides that "[a] person extradited under the Treaty shall not be detained, tried or punished in the territory of the Requesting State for an offense other than that for which extradition has been granted ... unless [an exception is satisfied]." Speciality is a right that belongs to the country that authorized extradition, *see Shapiro v. Ferrandina,* 478 F.2d 894, 906 (2d Cir.), *cert. denied,* 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973), and it may be waived by that nation, *see United States v. Najohn,* 785 F.2d 1420, 1422–23 (9th Cir.1986), or by the defendant, *see United States v. Vreeken,* 803 F.2d 1085, 1089 (10th Cir.1986) (speciality is rule of personal, not subject matter, jurisdiction), *cert. denied,* —— U.S. ——, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987). In *United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886), the Supreme Court incorporated the speciality principle into American law. The defendant's right derives from the supremacy of treaties under Article VI of the Constitution. *See id.* at 419, 7 S.Ct. at 240.

Consequently, Lehder's arguments put two tasks before this Court. The documents authorizing extradition must be construed. When the extraditing country does not expressly state an objection to a prosecution, as in this case,[2] the Court must inquire "whether the surrendering state would regard the prosecution at issue as a breach." *United States v. Jetter,* 722 F.2d 371, 373 (8th Cir.1983). This inquiry is not an easy one, for it must be done mindful that the authorities in the surrendering state are not shaping their decree for the purpose of dissection in American courts. In addition, the Treaty must be examined to determine if the CCE charge is an extraditable offense. In this regard, it must be borne in mind that "[e]xtradition treaties are to be liberally, not strictly,

---

**2.** The record contains no evidence of a protest from the government of Colombia.

construed." *Factor v. Laubenheimer,* 290 U.S. 276, 303, 54 S.Ct. 191, 199, 78 L.Ed. 315 (1933).

### Approval of the Extradition Request

Lehder's argument focuses entirely on the opinion of the Colombian Supreme Court. This focus is misdirected. The role of that tribunal, as explained by its own opinion, is to review the extradition request for "total compliance" with the Treaty and with Colombian law. When the Colombian Supreme Court granted "favorable judgment" to the extradition "in accordance with the request formulated by the Government of the United States of America", it granted the Colombian President authority to consider the extradition request *without reservation.* The decision to extradite then laid entirely in the hands of the Executive. The relevant documents to review are the two "Resolutions" by which the Colombian President approved the extradition.[3]

■ Assuming *arguendo,* however, that the Colombian Supreme Court opinion bears on the authority exercised by the Executive, this Court can find no reason to qualify the express wording of the Colombian court's resolution. The Colombian Supreme Court was apprised of the full range of charges for which Lehder was indicted.[4] The opinion describes one of the offenses as "participating in a criminal enterprise continuously with other persons (narcotics traffic)". Act No. 100, English Translation, at 14 (Defendant's Exh. B). The discussion is imprecise by American terms, but Colombian courts cannot be expected to be centers of American legal scholarship.[5] The Colombian Supreme Court clearly con-

veyed its meaning in the final "resolves" section of the opinion. This Court is not a court of appeals from the judgment of the Colombian Supreme Court. This Court can do no more than look to the language of the Colombian opinion, in the circumstances under which it was rendered, and conclude that the CCE charge was not excluded from the "favorable judgment" on the extradition request. *Cf. United States v. Paroutian,* 299 F.2d 486, 490–91 (2d Cir. 1962) (language and circumstances used to determine if charges fell within decree of extradition).

The Resolutions issued by the Colombian President indicate that he understood the "favorable judgment" to include the CCE charge. In Resolution No. 101 of June 8, 1984, the Colombian President made particular reference to the CCE offense. In fact, if the CCE charge did not fall within the approval of the extradition request, the Treaty requires that Colombia communicate the reasons for its refusal to extradite on that charge. *See* Treaty, Art. 12, sec. 2 ("The Requested State shall give the reasons for complete or partial rejection of the request for extradition."). The absence of explicit language denying extradition on the CCE charge compels the conclusion that the charge was included in the approval of Lehder's extradition.

One final reason for confidence in this conclusion is the lack of objection to this prosecution by the Colombian government. The Act of Surrender (Defendant's Exh. E) cautioned the American government that Colombia would monitor this trial "so that [Lehder's] universally recognized human rights are respected." Colombia has a

---

**3.** Indeed, the "Act of Surrender" mentions only the executive resolutions. No reference is made to the Colombian Supreme Court ruling.

**4.** Lehder was represented by counsel before the Colombian Supreme Court and before the President of Colombia. The record does not contain any rule of speciality objection to the CCE charge in those forums. Lehder apparently had opportunity to interpose objection to his extradition on the CCE charge. Given his opportunity, silence on this issue should be construed as approval of extradition on all charges.

**5.** Lehder makes much of the Colombian Supreme Court's enumeration of charges from the indictment, a list that omits 21 U.S.C. sec. 848. The context suggests inadvertence, not deliberate omission. The court mistakenly refers to section 841 as "Articles 841". This kind of simple misstatement no doubt parallels the legal difficulty which American courts experience with foreign law. The difference in cultures cautions against strict construction (based on inferences) of the Colombian court opinion. Omissions like those identified by Lehder should be read liberally, consistent with the document as a whole.

record of vigilance in matters concerning the rule of speciality. *See United States ex rel. Cabrera v. Warden, Metropolitan Correctional Center,* 629 F.Supp. 699, 700–01 (S.D.N.Y.1986) (Colombian government addressed diplomatic note to U.S. regarding alleged violation of rule of speciality). In these circumstances, the absence of protest by Colombia further evidences the correctness of finding that the CCE charge is included in the approval of extradition.

**Dual Criminality and the Colombia-United States Treaty**

Lehder argues that the CCE charge is not listed in the enumerated offenses subject to extradition and has no comparable counterpart offense in Colombian law. Accordingly, the charge could not be subject to extradition under the Treaty. *See* Art. 2, sec. 1. The government contends that the CCE charge is a form of conspiracy relating to narcotics trafficking, possessing a different name and different elements than a simple conspiracy. The government's argument relies on the listing of narcotics trafficking in the schedule of offenses in the Treaty's Appendix (Item 21), the approval of conspiracy prosecutions in Art. 2, sec. 4(a), and the proviso that offenses need not be denominated the same by both countries to qualify for extradition, Art. 2, sec. 2.

Lehder's claim is not implausible. He proposes that the CCE offense is so uniquely American that it cannot satisfy a dual criminality clause in an extradition treaty. *See generally* Bernholz, Bernholz & Herman, *International Extradition in Drug Cases,* 10 N.C.J. Int'l L. & Com.Reg. 353, 358–61 (1985); (same authors), *Problems of Dual Criminality,* Trial, Jan. 1985, at 58. However, the argument relies on the key premise that "the determination of whether it is recognized as punishable in the requested country must be made with reference to CCE as a whole and not its separate parts." 10 N.C.J. Int'l L. & Com.Reg. at 361. This premise is not supported by precedent. *See Collins v. Loisel,* 259 U.S. 309, 312, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922) ("The law does not require that the name by which the crime is described in the

two countries shall be the same; nor that the scope of liability shall be coextensive, or in other respects, the same in the two countries."); *Brauch v. Raiche,* 618 F.2d 843, 850–51 (1st Cir.1980) (rejecting "strict congruity of offenses" analysis in favor of "substantially analogous" standard); *see also Matter of Extradition of Russell,* 789 F.2d 801 (9th Cir.1986) (Australian offense of conspiracy without overt act satisfied dual criminality); *Messina v. United States,* 728 F.2d 77 (2d Cir.1984) (Italian offenses "in the nature of extortion" satisfied dual criminality).

Importantly, the determination whether CCE is subject to extradition under the Treaty is squarely a matter of interpretation of this particular document. The argument proposed by the government is one reasonable interpretation of the Treaty. "[I]f a treaty fairly admits of two constructions, one restricting rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred." *Factor v. Laubenheimer,* 290 U.S. 276, 293–94, 54 S.Ct. 191, 195–96, 78 L.Ed. 315 (1933) (referring to rights of nations to demand extradition). "Extradition treaties are to be construed liberally to effect their purpose, *i.e.,* the surrender of fugitives to be tried for their alleged offenses." *United States v. Wiebe,* 733 F.2d 549, 554 (8th Cir.1984). Consequently, the Treaty should be read to permit extradition for CCE offenses.

The context in which the Treaty was negotiated supports this interpretation. President Carter had pledged to control the influx of drugs into this country by enlisting the assistance of the countries where drug traffickers were based. *See generally* Note, *Extradition Treaty Improvements to Combat Drug Trafficking,* 15 Ga.J. Int'l & Comp.L. 285, 292–94 (1985). The extradition treaty with Colombia was an outgrowth of this campaign. It listed narcotics as an extraditable offense for the first time in a treaty with Colombia. *See* Letter of Submittal by William Clark, *Extradition Treaty with the Republic of Colombia,* S. Treaty Doc. No. 8, 97th Cong., 1st Sess., at v (1981). The importance of

CCE prosecutions to the government's war on drugs leads this Court to presume that the loose language of the Treaty was intended to include extradition under that important statute.

In contrast, Lehder seeks from this Court an interpretation of the extradition treaty which the parties themselves refuse to accept. By its request to Colombia, the United States proffered its belief that the Treaty encompasses CCE offenses. By clearing the extradition without reservation, Colombia affirmed this construction of the Treaty. Colombia's continuing acquiescence corroborates this view. When the parties act as if CCE is within the category of crimes subject to extradition, this Court is not positioned to disagree.

Alternately, this extradition could be viewed as an exception to the rule of speciality in the Treaty. Article 15, section 1(c), provides that the rule of speciality does not apply when:

> The Executive Authority of the Requested State has consented to that person's detention, trial, or punishment for another offense ... provided that the principles of [the political and military exception] shall be observed.

Lehder does not challenge the remainder of his extradition. Prosecution on the CCE charge may be viewed as an act of comity, authorized by this exception, on the part of the President of Colombia.[6] *See United States v. Najohn*, 785 F.2d 1420, 1422–23 (9th Cir.1986) (requested government may waive speciality on additional charges not listed in extradition request); *Fiocconi v. Attorney General of the United States*, 462 F.2d 475 (2d Cir.1972) (offense outside scope of extradition treaty may be prosecuted if comity is not violated).

Another alternative is to look to the Amended Convention on Narcotic Drugs, March 25, 1972, T.I.A.S. No. 8118, 26 U.S.T. 1441. As William Clark noted in a letter accompanying submission of the Treaty to the Senate, "both Colombia and the United States are Parties to multilateral conventions which in effect have amended the existing bilateral treaty to include narcotics ..." Letter of Submission, *supra*, at v. Article 14 of the Amended Convention on Narcotic Drugs (amending Article 36 of the Single Convention) incorporates certain enumerated offenses into any extradition treaty existing between Parties. Sec. 2(b)(i). The relevant subsections state:

> 1. (a) Subject to its constitutional limitations, each Party shall adopt such measures as will ensure that cultivation, production, manufacture, extraction, preparation, possession, offering, offering for sale, distribution, purchase, sale, delivery on any terms whatsoever, brokerage, dispatch, dispatch in transit, transport, importation and exportation of drugs contrary to the provisions of this Convention, and any other action which in the opinion of the Party may be contrary to the provisions of this Convention, shall be punishable offences when committed intentionally, and that serious offences shall be liable to adequate punishment particularly by imprisonment or other penalties of deprivation of liberty.
>
> .    .    .    .    .
>
> 2. Subject to the constitutional limitations of a Party, its legal system and domestic law,
>
> .    .    .    .    .
>
> (a)(ii) Intentional participation in, conspiracy to commit and attempts to commit, any of such offences, and preparatory acts and financial operations in connexion [sic] with the offences referred to in this article, shall be punishable offences as provided in paragraph 1;

.    .    .    .    .

This broader scope of offenses subject to extradition would appear to embrace any additional elements of the CCE offense not already subject to extradition under the Treaty. This Court may properly take no-

---

**6.** According to news reports, the Colombian Supreme Court declared the Treaty invalid subsequent to Lehder's extradition. *See* N.Y. Times, August 16, 1987, at 12, col. 5. The impact of this decision is not clear. If the invalidity of the Treaty removed it as the basis for Lehder's extradition, then the rule of speciality would no longer apply. An extradition based on comity is not subject to speciality.

tice of this expanded authority under the Amended Convention. *See United States v. Jetter*, 722 F.2d 371, 373 (8th Cir.1983) (using Amended Convention to expand category of offenses subject to extradition from Costa Rica).

In sum, the Extradition Treaty Between the United States of America and the Republic of Colombia may be reasonably construed to include participation in a continuing criminal enterprise as an offense subject to extradition. Alternatively, the Treaty's rule of speciality exception can encompass prosecution on the CCE charge in Lehder's case. Finally, the multilateral Amended Convention of Narcotic Drugs also confers broad authority to extradite Lehder for the CCE charge.

Accordingly, it is

ORDERED AND ADJUDGED:

That Defendant Lehder's Motion to Enforce the Rule of Speciality and Abate Prosecution on Count XII of the Indictment is hereby denied.