**UNITED STATES of America, Plaintiff,**

v.

**Frederick Nigel BOWE, Defendant.**

**No. 85–0701–CR–KING.**

United States District Court,
S.D. Florida.

Sept. 1, 1993.

Marcella Cohen and Robert Ciaffa, Asst. U.S. Attys., Miami, FL, for plaintiff.

Frank A. Rubino, Coconut Grove, FL, for defendant.

***ORDER SETTING COUNTS FOR TRIAL AND AFFORDING THE COMMONWEALTH OF THE BAHAMAS ADEQUATE TIME TO DECIDE WHETHER IT WOULD CONSIDER A PROSECUTION OF DEFENDANT ON ALL COUNTS OF THE INDICTMENT TO VIOLATE THE RULE OF SPECIALTY***

JAMES LAWRENCE KING, District Judge.

THIS CAUSE comes before the Court on Defendant's Appeal of Magistrate's Report and Recommendation, filed December 23, 1992. The delay in ruling on Defendant's objections has been at the request of Defendant and has been occasioned by his search for new counsel prior to a hearing on this matter.

## I. Background

Defendant is a citizen of the Commonwealth of The Bahamas and maintains residence in Nassau, Bahamas. He was indicted in the Southern District of Florida on narcotics charges. Count I of the indictment charges Defendant with conspiracy to import and distribute cocaine in violation of 21 U.S.C. § 963. Counts II, III, V, VI, VII, and VIII charge him with distribution of cocaine in violation of 21 U.S.C. § 959 and 18 U.S.C. § 2. Count IV charges that the Defendant attempted to import cocaine in violation of 21 U.S.C. § 963 and 18 U.S.C. § 2. Counts IX, XV, XVI, and XVIII charge Defendant with violating the Travel Act, 21 U.S.C. §§ 952(a), 959, and 963, and 18 U.S.C. §§ 1952(a)(3) and 2. And Count XX charges the Defendant with engaging in a continuing criminal enterprise, 21 U.S.C. § 848.

The United States instituted extradition proceedings pursuant to existing United States and Bahamian law and the Extradition Treaty between the United States and The Bahamas and United Kingdom. Defendant challenged the extradition in Bahamian and British proceedings which ultimately lasted seven years. On October 6, 1990, Magistrate Joseph Alfred of the Commonwealth of The Bahamas ordered the extradition of Defendant to the United States on the charges that (1) he conspired to unlawfully import dangerous drugs in violation of Bahamian law and (2) he imported dangerous drugs in violation of Bahamian law.[1] After further challenges to the extradition order proved unsuccessful, Defendant was delivered to the custody of the United States on August 10, 1992.

█ In this Court, Defendant has urged that he can only be prosecuted for the

---

1. Indicating the charges by reference to the law of the extraditing country is customary in extradition proceedings.

charges specifically mentioned in the extradition order, namely, conspiracy to import dangerous drugs and unlawful importation of dangerous drugs. The legal basis for his claim is the "rule of specialty", a provision common to international extradition treaties, and one which is contained in Article 7 of the extradition treaty between the United States and The Bahamas. That rule provides that a defendant shall only be tried for those crimes for which he was extradited.

## II. *The Rule of Specialty and Defendant's Objections*

■ Magistrate Garber aptly explained the parameters of this rule in his Report and Recommendation to which Defendant is objecting. The rule of specialty provides rights to the extraditing country, but these rights may be asserted by the individual defendant in place of that country. *United States v. Rauscher*, 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886). Thus, the defendant's rights are limited to "those objections to the extradition process that the surrendering country might consider a breach of the extradition treaty." *United States v. Diwan*, 864 F.2d 715, 721 (11th Cir.), *cert. denied*, 492 U.S. 921, 109 S.Ct. 3249, 106 L.Ed.2d 595 (1989); *see also United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986); *Berenguer v. Vance*, 473 F.Supp. 1195, 1197 (D.D.C. 1979). The test to be utilized by the United States court is "to determine, as best as one can, whether the surrendering state would regard the prosecution at issue as a breach." *Fiocconi v. Att. Gen. of United States*, 462 F.2d 475, 480 (2d Cir.), *cert. denied*, 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972).[2] The extraditing country may waive any objections which it might assert under the rule of specialty, and the "absence of [an] objection [can constitute] sufficient consent where [the] additional crimes [are] similar to [the] one for which extradition was obtained."

*Najohn*, 785 F.2d at 1423 (construing *Fiocconi*, 462 F.2d at 481).

■ Defendant contends that the rule of specialty means he may not be prosecuted for attempted importation, violations of the Travel Act, or engaging in a continuing criminal enterprise. There are several inter-related premises which ground Defendant's argument: (1) The charges in question are separate and distinct from those specifically mentioned in the extradition order; (2) The additional, distinct charges are not extraditable because they do not exist in the United States–Bahamas treaty or in Bahamian law; and (3) The Commonwealth of The Bahamas has objected to his being prosecuted on the charges not specifically mentioned in the extradition order, on the grounds that they are distinct from the charges for which he was extradited.

The United States has asked the Court to reject these objections on the grounds that (1) The challenged charges are not distinct but, instead, are so intimately related to the charges that were listed in the extradition order as to constitute essentially the same offense; (2) The United States is not precluded from prosecuting Defendant on these charges because the additional counts are not distinct from the listed charges, the offenses underlying all of the counts are extraditable, and Defendant was, in fact, extradited for these offenses; and (3) The Commonwealth of The Bahamas has not objected to the United States prosecuting Defendant on all counts in the indictment.

All three of these issues are inter-related; a holding that rejects the first of Defendant's arguments by finding all counts to be intimately related would effectively also reject the second—and possibly even the third—of Defendant's arguments. If the challenged charges are held not to be distinct and separate from the charges listed in the extradition order, then there would be no issue as to their extraditability since the Bahamian and

---

2. Defendant argues in his objections to the magistrate's report that *Fiocconi* is inapposite because that case involved extradition in the absence of a treaty. The *Fiocconi* court, however, made clear that the same jurisprudence was applicable to both circumstances. Referring specifically to the seminal case of *U.S. v. Rauscher,*

*supra*, the *Fiocconi* court stated that "the treaty was important only as clarifying what offenses were or were not extraditable." 462 F.2d at 479. The *Fiocconi* court clearly intended its reasoning to apply with equal force to the instant case of extradition under a treaty.

British courts have already found the listed charges to be extraditable. United States courts are not in a position to limit the charges the government can bring against a defendant if the courts of the extraditing nation have concluded that the challenged charges are extraditable. *United States v. Cauwenberghe,* 827 F.2d 424, 429 (9th Cir. 1987) (A United States court is " 'preclude[d] [from] any review of [an extraditing] court's decision as to the extraditable nature of the offense. . . .' According deference to the surrendering country's decision as to extraditability already underlies the related 'doctrine of specialty' ") (citation omitted). A related proposition is that when the acts underlying the challenged offenses are unlawful in both the extraditing and prosecuting nations, a defendant may not assert an objection based on the principle of double criminality, for there is no requirement that the criminal codes of the two countries be identical in their terminology. *United States v. Sensi,* 879 F.2d 888, 893 (D.C.Cir.1989); *Greene v. United States,* 154 F. 401 (5th Cir.), *cert. denied,* 207 U.S. 596, 28 S.Ct. 261, 52 L.Ed. 357 (1907).

### III. Standing

Defendant acknowledges in his reply memorandum on this issue, dated November 9, 1992, that "[t]he 'Rule of Specialty' is a prerogative belonging to the country which surrenders the fugitive." However, he emphasizes that a defendant, in place of the rendering country, may assert objections based on the rule as long as the rendering country has not consented to prosecution on the charges in question.

There exists conflicting authority as to whether an extradited defendant has standing under the rule of specialty to object to particular charges. *See United States v. Davis,* 954 F.2d 182, 186 (4th Cir.1992) (citing apparently conflicting cases); *Leighnor v. Turner,* 884 F.2d 385, 388 n. 4 (8th Cir.1989) (same). This Court, however, follows the Eleventh Circuit in *Diwan* in recognizing that a defendant indeed has standing under the rule of specialty—although, as explained more fully *infra,* the defendant's standing to assert rights under the rule clearly derives from the rights conferred on the extraditing nation and is therefore not unqualified. 864 F.2d at 721.

### IV. The Position of the Commonwealth of The Bahamas on Whether There Has Been a Breach of the Rule of Specialty and the Importance of The Bahamas' Opinion to This Case

█ In his written objections, Defendant urges that the Commonwealth of The Bahamas *implicitly* objected to his being charged on all counts when it specified only two as the basis for his extradition. This argument is flawed; an extradition order that lists two specific counts is insufficient, *in and of itself,* to prevent prosecution on other counts not delineated in the order. *See generally Diwan, supra; Sensi, supra; Najohn, supra; Fiocconi, supra; United States v. Paroutian,* 299 F.2d 486 (2d. Cir.1962). Rather, in situations such as this, the case law is clear that the court is to ascertain the intent of the extraditing country by examining the degree of similarity between the listed counts and the challenged ones. The United States Magistrate therefore rejected the argument put forth by Defendant, by examining the relationship of the charges in the extradition order to the other charges contained in the indictment. He concluded that the failure of the Commonwealth to list all the charges contained in the indictment was insufficient to establish that The Bahamas implicitly objected to the other charges; he held that the charges contained in the other counts were so intimately related to the named charges that the Bahamian government would not truly consider that a violation of the rule of specialty had occurred. This Court is prepared to review the magistrate's report and conduct this inquiry *de novo;* however, the Court first chooses to afford the Commonwealth of The Bahamas an adequate opportunity to review the issue and make its position clear if it so chooses. As explained more fully *infra,* the position of The Bahamas on this matter would factor significantly into this Court's deliberations on the issue.

At a hearing before the Court on this matter, Defendant asserted that the Commonwealth of The Bahamas had, in fact, *ex-*

*plicitly* objected to the prosecution of Defendant on charges contained in the indictment that had not been cited by the Bahamian magistrate as grounds for Defendant's extradition. He contended that correspondence between the United States and Bahamian governments would reflect this objection. Consequently, this Court ordered the United States to produce for *in camera* review all correspondence between the two governments pertaining to this case. The United States has produced for the Court a series of inter- and intra-governmental communications. The inescapable conclusion to be drawn from these documents is that the Commonwealth of The Bahamas is still contemplating whether to file a formal objection to the prosecution. This Court cannot at this time conclude that no objection will be forthcoming. It would likewise be premature to conclude that no express consent will be forthcoming from The Bahamas.

As stated above, the Court recognizes that a defendant can object under the rule of specialty in place of the extraditing government; however, an indication by the extraditing government one way or the other would necessarily weigh as a significant factor in a court's deliberations. In this case, if the Commonwealth of The Bahamas decides to *consent* to the prosecution, Defendant will lose all rights to object based on the rule of specialty. *Diwan,* 864 F.2d at 721; *Najohn,* 785 F.2d at 1422–23; *United States v. Lehder–Rivas,* 668 F.Supp. 1523 (M.D.Fla.1987). Whether inaction by The Bahamas after careful consideration of the matter can be deemed to constitute consent is not yet for this Court to decide. Alternatively, if the Commonwealth explicitly and formally *objects* to the prosecution of Defendant on the charges in question, this Court would feel more constrained by international comity than it would in the event of an objection made solely by Defendant. The purpose of the rule of specialty is not to shelter extradited defendants but to ensure adherence to international obligations and foster respectful international relations. *Diwan,* 864 F.2d at 721 ("[T]he objective of the rule is to insure that the treaty is faithfully observed by the contracting parties"); *Fiocconi,* 462 F.2d at 480 n. 8 (While the rule of specialty contains elements of both domestic and international law, "the rule of domestic law conferring a judicial remedy on the extraditee can be a rule according him the remedy only if the surrendering government would object, since the underlying substantive wrong, which grows out of international law, is only to the [surrendering government]"); *United States v. Deaton,* 448 F.Supp. 532, 537 (N.D.Ohio 1978) (" 'As a matter of international law, the principle of specialty has been viewed as a privilege of the asylum state, designed to protect its dignity and interests, rather than a right accruing to the accused' ") (quoting *Shapiro v. Ferrandina* 478 F.2d 894, 906 (2d Cir.1973)).[3] Thus, under the principle of international comity, an objection by the extraditing country would be due greater deference than an objection by the individual—especially when the Court is inclined to find that no violation of the rule of specialty has occurred. This is not because the inquiry

---

**3.** At least one court sees a conflict between these principles articulated in *Fiocconi, Deaton,* and *Shapiro* and those espoused in *Najohn.* After noting the above-quoted principle enunciated in *Shapiro* and recognizing similar language in *United States ex rel. Donnelly v. Mulligan,* 76 F.2d 511 (2d Cir.1935), *Demjanjuk v. Petrovsky,* 776 F.2d 571, 583–84 (6th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986), and *Berenguer, supra*—the Ninth Circuit stated, "We, however, adhere to the opposing position [set forth in *Najohn* ], allowing petitioner to raise claims which might have been raised by the asylum state." *U.S. v. Cuevas,* 847 F.2d 1417, 1426–27 n. 23 (9th Cir.1988).

This Court sees no such conflict between the principles embodied in these cases. The *Cuevas* case focuses on standing, insisting that a defendant can assert a claim under the rule of specialty in place of the extraditing government. *Accord United States v. Davis,* 954 F.2d at 186 (interpreting *Cuevas* as a case on standing). As is explained more fully *infra,* the fact that the rights under the rule of specialty accrue to the extraditing government is not inconsistent with a defendant being able to assert those rights in place of the government—it just means his claims are limited to those that the government could assert directly.

In any event, *Diwan* is controlling on this Court. As noted, that case recognizes that a defendant has standing under the rule of specialty, and it endorses the view that the rule confers rights upon the extraditing government which the defendant may then assert in its stead, subject to the above-mentioned limitations.

would be any different depending on who was objecting under the rule of specialty—this Court recognizes that a defendant may assert the same objections as the extraditing state; rather, the significance lies in the fact that an objection by the extraditing government figures prominently in the outcome of that inquiry.

The Second Circuit formulated the test as follows: "[I]t [is] essential to determine, as best one can, whether the surrendering state would regard the prosecution at issue as a breach." *Fiocconi*, 462 F.2d at 480. *Accord Diwan*, 864 F.2d at 721 ("In determining whether the prosecution of [the defendant] was a breach of the extradition treaty, it is essential that we determine whether Great Britain would regard the prosecution as an affront to its sovereignty, for the remedy which [the defendant] seeks, and the arguments that she advances in support thereof, are derivative in nature"). Obviously, the most accurate way to determine this fact is upon the express opinion of the extraditing country. Thus, although a defendant has standing to assert those objections which could be asserted by the extraditing state, he is merely serving as a surrogate for the state, and an objection by the extraditing state itself would clearly be owed greater deference in the determination of whether that state considered the rule to have been violated.

Unlike in cases of irregular rendition (*see, e.g., Ker v. Illinois*, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1886); *Frisbie v. Collins*, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952)), United States courts cannot simply defer to the executive on whether there has been a violation of the rule of specialty. In addressing this issue, the Second Circuit recognized that "not 'every case of [sic] controversy which touches foreign relations lies beyond judicial cognizance.'" *Fiocconi*, 462 F.2d at 480 n. 9 (citation omitted). It went on to state, "[W]e deal here not with a violation of territorial sovereignty [as with *Ker–Frisbie* cases], but with a possible affront to [the extraditing state's] sovereignty as a result of an alleged breach of faith with its act of comity. To the extent that there is any question of judicial cognizance of the conduct

of our executive branch in the latter situation, this case is controlled by the [principles enunciated by the Supreme] Court[ ]...." *Id.* In making its own judgment that the prosecution in question did not violate the rule of specialty, the Second Circuit emphasized "the absence of any affirmative protest from [the extraditing country.]" *Id.* at 481.

## V. Conclusion

In the case at hand, this Court must judge whether prosecuting Defendant on all counts of the indictment would violate the rule of specialty. The Court acknowledges that Defendant has standing to object under the rule of specialty to particular charges, and the Court recognizes that it can make an independent assessment of whether there has been a violation of the rule of specialty. In the absence of a clear indication from the Commonwealth of The Bahamas, the Court must examine the relationship of the charges listed in the extradition order to the other charges contained in the indictment, and by so doing, the Court must determine the likely position of The Bahamas. The Court is prepared to review the magistrate's report, which was premised on the absence of any objection by The Bahamas, and conduct the above inquiry. However, in light of the position of the Commonwealth of The Bahamas and the fact that it only recently received the information on this issue requested of the United States, the Court, in the interest of international comity, desires to afford The Bahamas adequate time to decide whether it considers the rule to have been breached and to make its position clear if it so chooses.

Accordingly, after a careful review of the record, and the Court being otherwise fully informed in the premises, it is

ORDERED, ADJUDGED, and DECREED that if the Commonwealth of The Bahamas by October 1, 1993 affirmatively *consents* to prosecution on all counts, then the trial will be held as scheduled on November 1 on all counts. *Inaction* by the Commonwealth of The Bahamas *prior to October 1* will not be deemed to constitute consent; in the interest of international comity, the trial would then proceed on only the counts that correspond to those specifically men-

tioned in the extradition order, namely, the importation of illegal drugs and conspiracy to import illegal drugs. This trial would be without prejudice to the United States to reassert the remaining counts against Defendant; the issue of whether prosecution on these other counts might proceed or whether that would violate the rule of specialty would be decided upon motion by the United States following the initial trial of Defendant. If the Commonwealth of The Bahamas formally *objects* to the prosecution of Defendant on all counts of the indictment, then the Court will decide, upon motion of either party, whether prosecuting Defendant on the contested counts would violate the rule of specialty and, in its deliberations, will give appropriate weight to such objection.

DONE and ORDERED.