UNITED STATES of America,
Plaintiff–Appellee,

v.

Nazareth ANDONIAN, Vahe Andonian, Ruben Saini, Raul Vivas, and Juan Carlos Seresi, Defendants–Appellants.

Nos. 91–50622, 91–50623, 91–50624, 91–50625 and 91–50626.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1993.

Submission Deferred Dec. 23, 1993.

Resubmitted Feb. 9, 1994.

Decided July 19, 1994.

Stanley I. Greenberg, Los Angeles, CA, for defendant-appellant Nazareth Andonian.

Jerry L. Newton, Newton & Newton, Hermosa Beach, CA, for defendant-appellant Vahe Andonian.

Edward L. Masry, Masry & Vititoe, Studio City, CA, for defendants-appellants Seresi and Saini.

Jason D. Kogan, Daron L. Pooch, Bird, Marella, Boxer, Wolpert & Matz, Los Angeles, CA, for defendant-appellant Vivas.

Jean Kawahara, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BROWNING, BEEZER, and TROTT, Circuit Judges.

BEEZER, Circuit Judge:

The defendants appeal their jury convictions and sentences for conspiracy to commit money laundering and for money laundering in violation of 18 U.S.C. §§ 371 and 1956(a)(1)(A)(i) and (B)(i). The government alleged the defendants organized and operated a vast and elaborate money laundering network, known by its participants as "La Mina," which laundered cash drug proceeds by purchasing, trading, and selling gold and then wire-transferring the funds out of the country. Over a three-year period, approximately $316 million were funneled to banks in Central and South America.

Raul Vivas, Juan Carlos Seresi, Vahe Andonian, and Nazareth Andonian were convicted of conspiracy to launder money (Count 2) and of individual acts of money laundering alleged in Counts 3–27. Ruben Saini was convicted of conspiracy to launder money (Count 2) and of individual acts of money laundering alleged in Counts 6–27. Saini was acquitted of money laundering alleged in Counts 3–5. None of the defendants was convicted on Count 1, which alleged conspiracy to aid and abet the possession and distri-

bution of cocaine, in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2.

Vivas, Seresi, and the Andonians were each sentenced to 505 years in prison. Saini was sentenced to 27 years in prison.

The defendants appeal their convictions and sentences. They assign various errors to pretrial and trial proceedings and to their sentences. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.[1]

## I

At the request of the United States, Uruguay extradited Vivas on the original indictment in this case. After Vivas had been extradited, the grand jury returned the superseding indictment on which Vivas was ultimately tried. In a pre-trial motion, Vivas challenged the district court's jurisdiction to try him on the superseding indictment. The district court denied the motion, and Vivas appealed. We dismissed the appeal on the basis that the order was neither final nor subject to interlocutory appeal. *United States v. Vivas*, No. 90–50182 (9th Cir.1990).

Vivas argues that his trial on the superseding indictment violated the doctrine of specialty, because the indictment that formed the basis of his extradition contained fewer counts and alleged a conspiracy of narrower scope than the superseding indictment. The original indictment alleged in Count 1 conspiracy to aid and abet in the possession and distribution of cocaine and to launder money. The substantive money laundering counts against Vivas appeared in two groups. Counts 2–7 alleged individual substantive counts of money laundering in the form of shipping currency from New York, New York, to Los Angeles, California, on several dates between November 14, 1988 and December 12, 1988. Counts 8–12 alleged individual substantive counts of money laundering in the form of depositing currency into bank accounts in Los Angeles between November 15, 1988 and December 14, 1988.

The superseding indictment alleges the drug conspiracy in Count 1 and the money

laundering conspiracy in Count 2. As in the original indictment, the substantive counts of money laundering appear in two groups. Counts 3–16 allege individual substantive counts of money laundering in the form of shipping currency from New York to Los Angeles on several dates between June 3, 1988 and December 12, 1988. Counts 13, 14, and 15 are identical to Counts 4, 6, and 7 in the original indictment. The remaining counts in this group (3–11, 12, and 16) are new, and three counts from the original indictment (2, 3, and 5) do not appear in the superseding indictment. Counts 17–27 of the superseding indictment allege substantive counts of money laundering in the form of depositing currency into bank accounts in Los Angeles between October 27, 1988 and December 20, 1988. Counts 19 and 25 are identical to Counts 10 and 12 of the original indictment. Nine of the remaining counts in this group (17, 18, 20–24, 26, and 27) are new, and three of the counts from the original indictment (8, 9, and 11) do not appear in the superseding indictment.

The superseding indictment also contains a greater number of alleged overt acts in furtherance of the conspiracy which roughly parallel the added substantive counts of money laundering. Vivas' alleged role in the conspiracy is described in more detail in the superseding indictment, with allegations that Vivas implemented the scheme to collect the currency proceeds of cocaine sales, use the proceeds to purchase gold, wire-transfer the proceeds from the gold to Uruguay, and then distribute the funds to cocaine traffickers and money launderers in Colombia.

## II

■ We review de novo the district court's determination that the prosecution on the superseding indictment did not violate the doctrine of specialty. *United States v. Khan*, 993 F.2d 1368, 1372 (9th Cir.1993).

■ "The doctrine of 'specialty' prohibits the requesting nation from prosecuting the extradited individual for any offense oth-

---

1. Because we here address only Vivas' argument that his trial on the superseding indictment violated the doctrine of specialty, we consider the remaining issues related to the trial and sentences in a separate memorandum disposition.

er than that for which the surrendering state agreed to extradite." *United States v. Van Cauwenberghe,* 827 F.2d 424, 428 (9th Cir. 1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). The doctrine is based on principles of international comity: to protect its own citizens in prosecutions abroad, the United States guarantees that it will honor limitations placed on prosecutions in the United States. *United States v. Cuevas,* 847 F.2d 1417, 1426 (9th Cir.1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1122, 103 L.Ed.2d 185 (1989). Our concern is with ensuring that the obligations of the requesting nation are satisfied. *United States v. Najohn,* 785 F.2d 1420, 1422 (9th Cir.), *cert. denied,* 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986). "Because of this, the protection exists only to the extent that the surrendering country wishes." *Id.* An extradited person may raise whatever objections the extraditing country is entitled to raise. *Cuevas,* 847 F.2d at 1426; *Najohn,* 785 F.2d at 1422.

■ We look to the language of the applicable treaty to determine the protection an extradited person is afforded under the doctrine of specialty. The treaty with Uruguay, pursuant to which Vivas was extradited, provides:

A person extradited under the present Treaty shall not be detained, tried or punished in the territory of the requesting Party for an offense other than that for which extradition has been granted ... unless ... the requested Party has manifested its consent to his detention, trial or punishment for an offense other than that for which extradition was granted....

Treaty on Extradition and Cooperation in Penal Matters, April 6, 1973, U.S.–Uru., art. 13, T.I.A.S. No. 10850 at 17–18 [hereinafter "Treaty"]. An extradited person, in any case, " 'may be tried for a crime other than that for which he was surrendered, *if the asylum country consents.*' " *Najohn,* 785 F.2d at 1422 (quoting *Berenguer v. Vance,* 473 F.Supp. 1195, 1197 (D.D.C.1979) (emphasis in original)).

## III

Vivas argues that the doctrine of specialty was violated in two respects: first, he was not tried on the offenses for which he was extradited; and second, he was not tried on the facts that were presented to the Uruguay court.

### A

Our prior decisions do not directly address the impact of the doctrine of specialty in a case involving a superseding indictment returned after the defendant has been extradited and alleging additional counts of the same substantive offense. Vivas urges us to hold that prosecution on a superseding indictment violates the doctrine absent an affirmative statement from the surrendering country authorizing trial on each count in the superseding indictment.

■ We agree with the government that the appropriate test for this case is "whether the extraditing country would consider the acts for which the defendant was prosecuted as independent from those for which he was extradited." *Cuevas,* 847 F.2d at 1428 (citing *United States v. Paroutian,* 299 F.2d 486, 491 (2d Cir.1962)). The order of extradition at issue in *Cuevas* specifically authorized trial on a fifteen-count indictment alleging narcotics and money laundering violations. Appended to the order, however, was an ambiguous injunction referring to the "fiscal aspect[s]" of the case. We concluded that the doctrine of specialty was not violated by trial on all fifteen counts, because the extraditing country's court had acknowledged the integral relationship between the narcotics charges and the currency reporting charges. *Id.; see also United States v. Sensi,* 879 F.2d 888, 895–96 (D.C.Cir.1989) (applying test of "whether the requested state has objected or would object to prosecution" for the offenses).

Although it did not involve a superseding indictment, the approach of *Cuevas* applies to the situation presented here. In *Cuevas* we relied on *Paroutian,* in which the Second Circuit rejected a specialty challenge to the defendant's trial on an indictment other than that for which he was extradited. *Parou-*

*tian,* 299 F.2d at 490–91. Both indictments in *Paroutian* contained charges of narcotics trafficking, but the later indictment, issued in another district, included two counts not covered in the indictment forming the basis for extradition from Lebanon. *Id.* The court reasoned that "the test whether trial is for a 'separate offense' should be not some technical refinement of local law, but whether the extraditing country would consider the offense actually tried 'separate.'" *Id.* Although the court agreed that trial on "some other offense totally unrelated to the traffic in narcotics" would violate the doctrine of specialty, the court concluded that additional narcotics trafficking charges would not have been considered separate offenses by the surrendering country. *Id.*

Similarly, in *Fiocconi v. Attorney General,* 462 F.2d 475, 481 (2d Cir.), *cert. denied,* 409 U.S. 1059, 93 S.Ct. 552, 34 L.Ed.2d 511 (1972), the court held that trial on a superseding indictment adding offenses subsequent to those alleged in the original indictment did not violate the doctrine of specialty. The court explained that, "in the absence of any affirmative protest from [the surrendering country], we do not believe that Government would regard the prosecution of [defendants] for subsequent offenses of the same character as the crime for which they were extradited as a breach of faith by the United States." *Id.*

In the instant case, the offenses alleged in the superseding indictment do not constitute "separate offenses" as that term is used in the context of the doctrine of specialty. Vivas nevertheless urges us to hold that the government was required to present the superseding indictment to the government of Uruguay and to obtain its affirmative consent to his trial. Vivas relies on our statement in *Khan,* 993 F.2d at 1374, that "[l]anguage from our opinions in *Van Cauwenberghe* [827 F.2d at 428] and [*Quinn v. Robinson,* 783 F.2d 776, 783 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986)], 'for any offense other than that for which the surrendering state agreed to extradite,' suggests the need for an affirmative statement by the surrendering country of the counts upon which the extradition is based." We

held in *Khan* that "we will not infer an agreement to extradite from [the surrendering country's] silence...." *Id.*

Vivas argues that *Khan* bars his prosecution on any *count,* as opposed to any *offense,* for which extradition was not expressly authorized by Uruguay. We reject this broad reading of the word "count" as it is used in *Khan.* Khan was extradited from Pakistan to stand trial for conspiracy to import heroin and for using a telephone to facilitate the conspiracy (Count VIII). Khan argued that prosecution on Count VIII violated the doctrine of specialty. Although the facts presented to Pakistan encompassed the count, the Pakistani commissioner's report had not once referred to the violation alleged in Count VIII or to its statutory predicate. In holding that Pakistan's silence was dispositive, we noted that "[w]e presume, without evidence to the contrary, that Pakistan would object to extradition on the basis of Count VIII because the offense charged there is not a crime in Pakistan." *Id.* at 1374 n. 5.

*Khan*'s reliance on *United States v. Rauscher,* 119 U.S. 407, 7 S.Ct. 234, 30 L.Ed. 425 (1886) and *United States v. Merit,* 962 F.2d 917 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 244, 121 L.Ed.2d 178 (1992), bolsters our conclusion that its "affirmative statement" standard applies primarily to a class of cases in which an ambiguous extradition order creates a risk that a defendant will be prosecuted for an offense which is unrecognized in the surrendering country. In *Rauscher,* for example, the Supreme Court held that a defendant extradited on a charge of murder could not be tried on the lesser charge of cruel and unusual punishment. *Rauscher,* 119 U.S. at 421, 430–32, 7 S.Ct. at 241, 246–47. The Court explained that

> as the treaty only justified his delivery on the ground that he was proved to be guilty of murder before the committing magistrate, it does not follow at all that such magistrate would have delivered him on a charge, founded upon precisely the same evidence, of inflicting cruel and unusual punishment, an offence for which the treaty made no provision, and which was of a very unimportant character when compared with that of murder.

*Id.* at 432, 7 S.Ct. at 247; *see also Merit,* 962 F.2d at 923 (affirming conviction on two counts where extradition order was silent as to other counts and where, after request for clarification, surrendering state had confirmed that defendant was extradited on only those two counts).

*Khan* is, for this reason, inapposite on its facts. There is no dispute here that money laundering is an extraditable offense under the Treaty, or that Uruguay agreed to extradite Vivas on charges of money laundering.

■ Our concern is with whether Uruguay would regard Vivas' prosecution for the additional counts of money laundering as a breach of the Treaty. We are confident Uruguay would not. The order authorizing Vivas' extradition contains a detailed recitation of Vivas' alleged crimes:

> As part of the entire drug trafficking operation, Vivas and some of his codefendants coordinated the collection of the proceeds from cocaine sales from the distributors in Los Angeles, California; New York, New York, and other places within the United States. Once the money was collected, Vivas and others supervised its transfer and deposit into bank accounts controlled by them in Los Angeles, whence it was transferred by wire or by cable to accounts in New York and Uruguay, for its ultimate distribution to the cocaine traffickers in Colombia.
>
> ... The specific counts against Vivas include that in 1986 he purchased a money exchange and precious metals business in Montevideo, Uruguay, called Cambio Italia or Letras S.A., which he used for the benefit of the drug traffickers for whom he worked, as a means of disguising the true origin of the large amounts of money transferred to them from the United States. Using Cambio Italia and other businesses in the United States, it is alleged that Vivas and his codefendants would devote themselves to making fictitious sales of gold, which was exchanged for the money that had been collected by

the cocaine distributors.... The evidence on which the counts against Vivas are based further indicates that hundreds of millions of dollars worth of illegal drug proceeds were transferred to the accounts belonging to Vivases [sic] businesses in Uruguay and were later remitted to Panama, Colombia or other places, on behalf of the cocaine traffickers.

Order of May 19, 1989, Second Office of Legal Court of First Instance for Criminal and Juvenile Matters, Maldonado, at 3–4. The Uruguay Court further noted that "the extradition treaties must always be interpreted in the light most favorable to the purpose for which they were created." *Id.* at 11. The Order specifically acknowledges extradition for trial on charges of money laundering. *Id.* at 18, 20.

■ The superseding indictment altered neither the nature of the scheme alleged nor the particular offenses alleged. The only significant difference between the two documents is that the superseding indictment is more specific in its description of the scheme and contains added substantive counts of money laundering.[2] Significantly, these additional substantive counts are identical to those alleged in the original indictment. The original indictment alleges instances of money laundering in the form of currency shipments from New York to Los Angeles and in the form of deposits to Los Angeles bank accounts; the superseding indictment alleges a greater number of such shipments and deposits conducted in exactly the same manner. We conclude that, under the circumstances of this case, Uruguay would not consider these additional acts to be independent from those for which Vivas was extradited.

## B

Vivas argues that the doctrine of specialty was further violated because he was not tried on the same facts as those presented to the government of Uruguay. Specifically, he asserts that the United States convinced Uruguay with insufficient and false evidence that

---

**2.** The suggestion that the *omission* of substantive counts of money laundering from the superseding indictment violates the doctrine of specialty lacks merit. *Rauscher* protects an extradited defendant only from being tried on a wholly different offense than that for which extradition is granted. It does not protect a defendant from being tried on fewer counts of the same offense.

Vivas was involved in drug trafficking and that the United States then tried him on different evidence.

The doctrine of specialty has been interpreted as requiring that "the prosecution be based on the same facts as those set forth in the request for extradition." *United States v. Sensi,* 879 F.2d 888, 895–96 (D.C.Cir.1989) (quotation omitted). The defendant in *Sensi* argued that he could not be tried on a 26–count indictment naming offenses that had not been listed before the magistrate of the surrendering country. The court found that the language of the treaty required that the charges against the defendant be established "'by the facts in respect of which his extradition [was] granted.'" *Id.* at 896 (quoting the relevant treaty).

Here, the Treaty provides:

The requested Party may require the requesting Party to produce evidence to establish probable cause that the person claimed has committed the offense for which extradition is requested. The requested Party may refuse the extradition request if an examination of the case in question shows that the warrant is manifestly ill-founded.

Treaty, art. 10, T.I.A.S. No. 10850, at 14.

▮ Vivas argues that, because there was insufficient evidence presented at trial to establish his guilt, there was insufficient evidence to extradite him. Even if we agreed that there was insufficient evidence to establish Vivas' guilt, which we do not, this argument would fail. First, the Treaty provides only that the United States may be required to establish probable cause to warrant extradition. The government need not prove its case beyond a reasonable doubt to the Uruguay authorities. Because Vivas may raise only those objections which Uruguay is entitled to raise, he cannot object to extradition on the basis the offenses for which he was charged were not established beyond a reasonable doubt to Uruguay.

▮ The government attempted, through substantial circumstantial evidence, to prove that Vivas was involved in a conspiracy related to cocaine trafficking. Both the original indictment, which was presented to Uruguay, and the superseding indictment allege Vivas' involvement in such a conspiracy. His acquittal on Count 1 of the indictment demonstrates only that the government failed to prove beyond a reasonable doubt that Vivas was a member of a conspiracy to aid and abet cocaine distribution. The acquittal says nothing about whether there was sufficient evidence for Uruguay to find probable cause to warrant extradition.

▮ Second, we note that the doctrine of specialty "has never been construed to permit foreign intrusion into the evidentiary or procedural rules of the requisitioning state, as distinguished from limiting the jurisdiction of domestic courts to try or punish the fugitive for any crimes committed before the extradition, except the crimes for which he was extradited." *United States v. Thirion,* 813 F.2d 146, 153 (8th Cir.1987) (quotations omitted). The doctrine of specialty is satisfied if the extraditing country honors the limitations placed on the prosecution by the surrendering state. *See Cuevas,* 847 F.2d at 1426. The government is not required, under the auspices of specialty, to try a defendant on the same *evidence* that was presented to the surrendering state, so long as it satisfies the requirement that trial is for the same offenses arising out of the same allegations of fact.

▮ Vivas also asserts that the evidence presented to Uruguay was false. The government provided to Uruguay the sworn declaration of a cooperating witness, Sergio Hochman, stating that Vivas was laundering money for Colombian drug traffickers. At trial, however, Hochman testified that he overheard a conversation in which Vivas stated "that he didn't want to have anything to do with drugs." We are unpersuaded that the government's failure (or inability) to introduce Hochman's declaration at trial has any bearing on its veracity. Even if Hochman's trial testimony may be construed as contradicting his declaration, a construction we do not here adopt, we cannot agree that Hochman's testimony shows that his declaration was false.

For the reasons stated here and in our separate unpublished disposition, Vivas' conviction is affirmed.

**AFFIRMED.**