**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert M. PETTY, Defendant–Appellant.**

No. 94–30394.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 20, 1995.

Decided April 10, 1996.

Peggy Sue Juergens, Seattle, Washington, for defendant-appellant.

Jerry Diskin, Assistant United States Attorney, Seattle, Washington, for plaintiff-appellee.

Before: REINHARDT and TROTT, Circuit Judges and WILLIAM W SCHWARZER, Senior District Judge.*

SCHWARZER, Senior District Judge:

Petty appeals from the judgment and sentence imposed following remand by this court. *See United States v. Petty*, 992 F.2d 887 (9th Cir.1993); *see also United States v. Petty*, 982 F.2d 1365 (9th Cir.1993), *amended*, 992 F.2d 1015 (1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 683, 126 L.Ed.2d 650 (1994); *United States v. Petty*, Unpublished Opinion, No. 90–30291, 1993 WL 3067 (9th Cir. Jan. 7, 1993). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a) and vacate and remand for resentencing.

## THE PROCEEDINGS BELOW

On April 29, 1994, in a status conference with counsel for the government and for Petty and his co-defendants, the district court determined that the issues to be resolved in connection with the resentencing were the drug quantities to be charged against Petty and his acceptance of responsibility. Petty's counsel suggested that an evidentiary hearing might be necessary to determine the correct drug quantities. He also informed the court that he intended to argue that Petty's criminal history was overrepresented and that a downward departure would be appropriate. The court set a briefing schedule and directed the probation officer to file his report by May 10, 1994. Sentencing, set for May 26, 1994, was later continued to July 1, 1994.

On May 11, 1994, the probation officer submitted a resentencing memorandum ad-

---

* The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

vising that Petty qualified for an acceptance of responsibility adjustment. On June 29, 1994, Petty's counsel wrote the court requesting a thirty-day continuance of the sentencing hearing to enable counsel to seek vacation of a California DWI conviction which raised Petty's criminal history category. He advised that the government "is in total agreement with th[is] request for continuance, because resolution of the validity of Mr. Petty's prior DWI conviction will significantly limit the issues left to be resolved at the resentencing hearing." Alternatively, he asked for a one week continuance to prepare a sentencing memorandum. On June 30, 1994, the court informed the parties that it was not inclined to grant a continuance.

On July 1, 1994, immediately before the resentencing hearing, government counsel presented a proposed stipulation to Petty's counsel. It provided that the parties agreed on the quantity of cocaine charged to Petty (fifteen to fifty kilograms), that the government agreed not to oppose a reduction for acceptance of responsibility and not to appeal an adverse determination, that the parties would not relitigate Petty's role in the offense, and that the government would not object to reconsideration of appellant's criminal history category. It also provided that "in view of this stipulation both [parties] agree to waive any right to further appeal." Both counsel as well as Petty signed the stipulation before the hearing.

Also on that day, immediately before the commencement of the hearing, the probation officer gave Petty's counsel a second resentencing memorandum dated May 20, 1994. That memorandum reviewed the criminal history calculation and explained the probation officer's prior decision not to recommend a downward departure on the basis of an "uncounted 1979 incident concerning cocaine possession." At the hearing, the following colloquy occurred between the court and Petty's counsel with respect to that memorandum:

> THE COURT: ... The Court has received and reviewed in connection with this resentencing probation's report to this Court dated May 11th and a memorandum from probation dated May 20. Did counsel

and the defendant have an opportunity to review those two memoranda?

> MR. TROBERMAN: Your Honor, I had reviewed the first that was mailed to me quite some time ago. I just received the second as I entered the courtroom today.

> THE COURT: Well, all right. You have received it and reviewed it?

> MR. TROBERMAN: I have, Your Honor.

Counsel then renewed his request for continuance of the sentencing hearing, pointing out that his associate was working on a writ to vacate the California DWI conviction, which increased defendant's criminal history calculation from level I to level III. He added that on the assumption that a continuance would be granted, he had not prepared for the hearing and had not yet submitted a brief in support of his argument for a lower history category. Government counsel said that he "share[d] [defense counsel's] confusion on the [un]willingness of the Court to further extend the matter to permit the California court to resolve [the DWI conviction] issue." He added, "I don't think we wait forever either. But it appears that [defense counsel] has been working on it diligently. And ... if Your Honor proceeds to sentencing, we may be back again."

The court denied the continuance and after hearing from counsel sentenced Petty to 210 months followed by five years of supervised release and a $950 assessment.

Petty appeals on two grounds: (1) that the district court committed reversible error by failing to comply with Fed.R.Crim.P. 32(a)(1)(A); and (2) that his sentence violates the double jeopardy clause. The government contends that the parties' stipulation, including the waiver of appellate rights, requires dismissal of the appeal.

## DISCUSSION
### WAIVER OF APPELLATE RIGHTS

We review *de novo* the issue whether Petty has waived his right to appeal. *United States v. Catherine*, 55 F.3d 1462, 1464 (9th Cir.1995); *United States v. Khaton*, 40 F.3d 309, 311 (9th Cir.1994). "A defendant may waive the statutory right to appeal

his sentence ... if [the waiver is] knowingly and voluntarily made." *United States v. Buchanan,* 59 F.3d 914, 917 (9th Cir.1995) (citations omitted), *cert. denied,* — U.S. —, 116 S.Ct. 430, 133 L.Ed.2d 345 (1995). Both defendant and the government signed the stipulation embodying the waiver, and neither disputes that the waiver was knowingly and voluntarily made. The question before us is whether the alleged Rule 32 and double jeopardy violations are within the scope of defendant's waiver.

■ Defendant argues that the stipulation is voidable on the ground of mutual mistake-that is, both parties mistakenly assumed that the court would grant a continuance of the sentencing hearing in order to enable defendant to seek vacation of his California DWI conviction. The argument in the form presented is unpersuasive. We do not interpret the stipulation as requiring a continuance of the hearing as a condition precedent to the operation of its other terms-including the resolution of the dispute about the drug quantity to be charged against Petty and the government's waiver of objections to an adjustment for acceptance of responsibility and to reconsideration of Petty's criminal history. It seems highly improbable that Petty intended to make his acceptance of the substantial benefits of the stipulation contingent on the court's continuance of the hearing.

■ Nonetheless the argument raises the issue of how to interpret the stipulation. Like any other contract, we must interpret it so as to carry out the intention of the parties. Although by its terms the stipulation waives "any right to further appeal," common sense tells us that this language has limits. Counsel for the government seemed to have thought so when, in the course of the discussion concerning the continuance at the sen-

tencing hearing, he suggested that if the court "proceeds to sentencing, we may be back again." In the absence of compelling evidence to the contrary, we do not interpret the language as a waiver of the right to appeal a substantial violation which arose only after the stipulation was signed and which could not have been anticipated. We do not suppose that, had the court proceeded to sentence Petty *in absentia,* this stipulation would have precluded an appeal. We see no basis for distinguishing the particular Rule 32 violation that did occur here, and therefore find that violation to be outside the scope of Petty's waiver.

■ Petty's double jeopardy claim is in a different posture. The factual basis for this claim obviously existed before the parties' stipulation, Petty having long ago been convicted and his property forfeited. Hence, it is reasonable to treat this claim as falling within the scope of the waiver. Moreover, Petty's double jeopardy claim would independently be precluded by his failure to raise the issue below. *United States v. Robertson,* 52 F.3d 789, 791 (9th Cir.1994)("Issues not presented to the district court cannot generally be raised for the first time on appeal."); *United States v. Flores–Payon,* 942 F.2d 556, 558 (9th Cir.1991)("As a general rule, we will not consider an issue raised for the first time on appeal."). While under "exceptional circumstances," we may consider such issues when, for example, they are "purely one[s] of law" or "plain error has occurred and injustice might otherwise result," there would be no reason to do so here.[1]

## THE VIOLATION OF RULE 32

■ Rule 32(c)(3)[2] provides in relevant part:

Before imposing sentence, the court must:

---

1. There is no merit to Petty's double jeopardy claim in any event, since his drug conviction and the criminal forfeiture were part of the same proceeding-arising out of the same indictment before the same court and resolved at the same time. As applied here, the criminal forfeiture statute, 21 U.S.C. § 853, imposes an additional sanction for violation of drug laws (approved by the Supreme Court in *United States v. Halper,* 490 U.S. 435, 450, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487 (1989)), and does not subject defendant to punishment twice for the same crime,

compare *United States v. $405,089.23 U.S. Currency,* 33 F.3d 1210, 1216–17 (9th Cir.1994), *amended on reh'g,* 56 F.3d 41 (1995), *cert. granted,* — U.S. —, 116 S.Ct. 762, 133 L.Ed.2d 707 (1996).

2. Petty's citation of Rule 32(a)(1)(A) is inapposite since that version of Rule 32 applies to offenses committed prior to November 1, 1987. The post–1987 version of Rule 32 contains substantially the same provision in subsection (c)(3).

(A) verify that the defendant and defendant's counsel have read and discussed the presentence report ... [and] give the defendant and the defendant's counsel a reasonable opportunity to comment on that information.

"[T]he plain language of [the rule] requires that the court determine whether or not the defendant and his counsel have had the opportunity to read and discuss the report." *United States v. Lewis*, 880 F.2d 243, 245 (9th Cir.1989)(decided under substantially the same language in the predecessor Rule 32(a)(1)(A)). Because the government conceded at oral argument that such treatment was appropriate, we treat both the May 11 and the May 20 memoranda as falling within the meaning of "presentence report" under Rule 32(c)(3)(A). The colloquy at the resentencing hearing established only that Petty's counsel had received and read the two memoranda, not that Petty had.

In *Lewis,* the court found compliance with the rule where defense counsel "told the sentencing judge that [defendant] had read the presentence report and [defendant] failed to dispute this assertion when personally addressed pursuant to [the rule]." *Id.* at 245–46. In contrast, in *United States v. Sustaita*, 1 F.3d 950 (9th Cir.1993), the court found that defense counsel's statement to the court that "[t]he objection that we have filed ... that we feel is appropriate" was insufficient to establish that defendant had read the presentence report. *Id.* at 953 (emphasis in original). In the present case, there is no indication that Petty had read or discussed either of the memoranda with counsel, and the timing of the receipt of the May 20 memorandum suggests that he did not have the opportunity to do so.

■ The government argues that even if there was error, it was not prejudicial for two reasons. First, relying on *United States v. Pimentel,* 34 F.3d 799 (9th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 777, 130 L.Ed.2d 671 (1995), it contends that the court had no authority to review defendant's criminal history category, the subject of the May 20 memorandum. *Pimentel* held that where the scope of the remand had been "expressly limited ... to consideration of a single sen-

tencing issue," the district court was without authority to revisit other issues. *Id.* at 800. In *United States v. Caterino,* 29 F.3d 1390 (9th Cir.1994), upon which the *Pimentel* court relied, we held that "unless there is clear evidence" in the remand of either an express or implied limitation on the issues the district court may consider in resentencing, "our general practice ... is to vacate the *entire* sentence and remand for resentencing whenever we find that a sentence was imposed in excess of the sentencing court's authority." *United States v. Caterino,* 29 F.3d 1390, 1394–95 (9th Cir.1994)(emphasis in original); *see also United States v. Jenkins,* 884 F.2d 433, 441 (9th Cir.1989), *cert. denied,* 493 U.S. 1005, 110 S.Ct. 568, 107 L.Ed.2d 562 (1989)(vacating and remanding for resentencing where "district court may have regarded ... the sentences [and its components] as a 'single sentencing package'"). There is no evidence, however, that this court either expressly or by implication limited the remand to only a portion of the sentence, *see Petty,* 992 F.2d at 891 ("Sentences VACATED; REMANDED for resentencing."); *Petty,* 992 F.2d at 1016 ("Sentence[s] of Petty ... REMANDED"). Moreover, the proceedings at the resentencing hearing itself reflect that the district court did not consider itself precluded from reconsidering Petty's criminal history category.

Second, the government argues that Petty had previously received all of the information contained in the May 20 memorandum. However, at the status conference, Petty's counsel advised the court that he would challenge probation's calculation of Petty's criminal history as overrepresented. In response, probation submitted the May 20 presentencing memorandum specifically addressing that issue and, in particular, its relation to the 1979 incident. Thus, while the background information was contained in the original 1990 presentence report, the May 20 memorandum further explained the probation department's evaluation of the 1979 incident as it related to its decision not to recommend a downward departure. As the probation officer wrote:

I believe that at the time of his original sentencing the probation office did feel that his criminal history was significantly less serious than that of most defendants based on the countable convictions, but we were also influenced by the 1979 cocaine incident. . . .

... I suspect that the issue that ultimately influenced our office to not recommend a downward departure to category II was the uncounted 1979 incident. . . .

The situation is analogous to that in *Sustaita*, in which this court held that where defendant did not have an opportunity to make objections to the presentence report, "we ... cannot excuse the court's failure to determine whether Sustaita read the presentence report or discussed it with her counsel as harmless." 1 F.3d at 954. If defendant and his counsel had been given an opportunity to review the May 20 memorandum before the sentencing hearing, they might have challenged the probation department's previously unexplained rationale in not recommending a downward departure. The error was not harmless.

Accordingly, we vacate Petty's sentence and remand for resentencing. We assume that sufficient time has passed for Petty to have resolved, one way or the other, the validity of his California DWI conviction.

VACATE and REMAND for resentencing.