**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Frankell Ivan BARAMDYKA,
Defendant–Appellant.**

**Frankell Ivan BARAMDYKA,
Petitioner–Appellant,**

v.

**UNITED STATES of America,
Respondent–Appellee.**

Nos. 94–50051, 95–55066.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 20, 1995.

Decided Sept. 10, 1996.

Laura P. Gordon, San Diego, California, for defendant-appellant.

Mary A. Schneider and Bruce R. Castetter, Assistant United States Attorneys, San Diego, California, for plaintiff-appellee.

Before POOLE and O'SCANNLAIN, Circuit Judges, and MARSH,* District Judge.

MARSH, District Judge:

Appellant was charged in four counts of a 12–count, 18–defendant indictment, with conspiracy to import and distribute cocaine in violation of 21 U.S.C. §§ 952, 960 and 963 (count 1), conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 846 (count 2), conspiracy to transport monetary instruments in excess of $10,000 without filing reports required by law in violation of 18 U.S.C. § 371, 31 U.S.C. §§ 5316 and 5322 (count 3) and travel in interstate commerce with the intent to carry on an unlawful activity (violations of 21 U.S.C. § 952, 960, 963, 846, 841(a)(1)) in violation of 18 U.S.C. § 1952(a)(3) (count 8). The government alleged that Baramdyka was the "head of a large scale drug trafficking organization" which was responsible for the importation and distribution of approximately 1,000 kilograms of cocaine into the United States from Colombia between approximately July of 1984 and May of 1985.

Prior to indictment, but shortly after learning that charges were imminent, Baramdyka left the United States with his family and moved to Chile. On March 10, 1987, the United States government made a request to Chile for extradition of Baramdyka on counts 1, 2, 3 and 8. On May 14, 1987, Baramdyka was arrested by Chilean authorities and placed in custody. On November 30, 1987, the Chilean Supreme Court issued an order authorizing Baramdyka's extradition on counts one and two only. Baramdyka was transferred to the Southern District of California pursuant to the Chilean Supreme Court's extradition order on May 6, 1993. Baramdyka contends that, although he did not contest extradition, at least three years of the time he spent in Chilean custody was on account of the extradition hold. The government contends that Baramdyka was transferred to the United States following the service of his sentence on unrelated charges filed by the Chilean government.

On May 12, 1989, while Baramdyka was in Chilean custody, the government seized numerous items of evidence including $427,000 in cash from the defendant's California home. These items, including the cash, were forfeited to the government pursuant to 21 U.S.C. § 881(a)(3). The government contends that this seizure was accomplished administratively and that Baramdyka failed to file any claim of interest to the property. The government further alleges that it has been unable to locate relevant files from the Customs Office. Baramdyka contends that the forfeiture was judicial and that he did contest the proceeding because one record indicates that a petition for remission was filed and rejected.

On September 7, 1993, Baramdyka entered a plea of guilty to counts 1 and 8 of the indictment. In return for this plea, the government agreed to dismiss counts 2 and 3 and further agreed to recommend a sentence of 8 years custody for count 1 and 5 years consecutive probation for count 8.[1] As part of his plea agreement, Baramdyka agreed to waive his right to appeal his conviction and

---

* The Honorable Malcolm F. Marsh, United States District Judge for the District of Oregon, sitting by designation.

1. Because the offenses took place prior to 1985, the sentence was imposed pursuant to pre-guidelines law.

sentence so long as the court did not impose a sentence any greater than that recommended by the government. The plea agreement also provided that Baramdyka was free to request credit for time served in Chilean custody. The sentencing hearing transcript indicates that Baramdyka sought credit and argued that the conditions of his confinement in Chile were relevant to his sentencing on the U.S. charges.

On December 6, 1993, The Honorable Howard Turrentine followed the government's recommendation and sentenced the defendant to eight years custody on count 1 with eligibility for parole under 18 U.S.C. 4205(b) and 5 years consecutive probation on count 8. Judge Turrentine expressly considered the fact that Baramdyka had spent time in Chilean custody "on another count" in reaching this sentence.

Baramdyka filed a timely notice of appeal.

On August 29, 1994, Baramdyka filed a *pro se* petition for habeas corpus pursuant to 28 U.S.C. § 2255 alleging that he received ineffective assistance of counsel and arguing that his conviction on count 8 violated the Chilean Supreme Court's extradition order. Baramdyka argued that his attorney failed to inform him of the fact that he could not be prosecuted for the crime charged in count 8 because the Chilean extradition order was limited to counts 1 and 2. Baramdyka sought to withdraw his plea based upon this alleged defect. Judge Turrentine denied this petition by written order on November 1, 1994, finding that Baramdyka lacked standing and because the U.S. government had included count 8 in its request for extradition.

## DISCUSSION

### 1. *Waiver of Appeal*

■ Waiver of a statutory right to appeal is reviewed *de novo*. *United States v. Bolinger*, 940 F.2d 478, 479 (9th Cir.1991).

■ A defendant may waive a statutory right to appeal his sentence. *United States v. Navarro–Botello*, 912 F.2d 318, 321 (9th Cir.1990), *cert. denied*, 503 U.S. 942, 112 S.Ct. 1488, 117 L.Ed.2d 629 (1992). However, an express waiver of the right to appeal is valid only if knowingly and voluntarily made. *Bolinger*, 940 F.2d at 480. This court looks to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defendant agreed to its terms knowingly and voluntarily. *Id.* In reviewing a waiver of appeal, we must also focus also upon the language of the waiver to determine its scope. *See e.g. United States v. Johnson*, 67 F.3d 200 (9th Cir.1995). Further, we have recognized that the waiver of a right to appeal may be subject to certain exceptions such as claims involving a breach of the plea agreement, racial disparity in sentencing among codefendants or an illegal sentence imposed in excess of a maximum statutory penalty. *See Id*, at 202, n. 4 (citations omitted); *see also United States v. Broughton–Jones*, 71 F.3d 1143, 1146 (4th Cir.1995) (waiver of appeal does not preclude claim that restitution exceeded statutory authority); *United States v. Attar*, 38 F.3d 727, 732 (4th Cir.1994) (waiver of appeal subject to limited exceptions), *cert. denied*, —— U.S. ——, 115 S.Ct. 1957, 131 L.Ed.2d 850 (1995). At least one court has noted that proper enforcement of appeal waivers serves an important function in the judicial administrative process by "preserv[ing] the finality of judgments and sentences imposed pursuant to valid plea agreements." *United States v. Rutan*, 956 F.2d 827, 829 (8th Cir.1992).

Baramdyka waived any appeal of his sentence or "any other grounds as long as the Court does not impose a period of imprisonment greater than that recommended by the Government." By entering such a broad waiver, Baramdyka expressly waived the right to appeal his conviction and sentence except to the extent that the court imposed a sentence greater than that recommended by the government. Under the law of this Circuit, Baramdyka also implicitly preserved his right to appeal on grounds that the sentence was illegal, imposed in violation of the plea agreement or for racially discriminatory reasons.

■ Baramdyka's sentence is consistent with the government's recommended sentence. Therefore, that possible exception to his waiver of appeal is unavailable. Further, because the sentence imposed was well with-

in the statutory maximum, it is not illegal and therefore, that exception is unavailable. Finally, Baramdyka raises no claim that the sentence was the result of discriminatory animus or any other similar form of due process violation. Thus, that exception is also inapplicable. Baramdyka's claim of lack of personal jurisdiction as to count 8 is, like a statute of limitations bar, a waivable affirmative defense, *see Acevedo–Ramos v. United States,* 961 F.2d 305, 307–308 (1st Cir.), *cert. denied,* 506 U.S. 905, 113 S.Ct. 299, 121 L.Ed.2d 222 (1992), and we decline to extend the limited exceptions to the waiver of an appeal to encompass such a claim. *See also United States v. Davis,* 954 F.2d 182, 186 (4th Cir.1992) (noting principle of specialty is a statutorily created right not rising to the level of "fundamentality ... traditionally demanded before addressing a question of law not argued at the district court level."). Thus, when Baramdyka waived his right of appeal, he waived his defense of lack of personal jurisdiction as to count 8.

The record shows that Baramdyka entered into the plea agreement and waiver of appeal knowingly and voluntarily. During Baramdyka's plea hearing, the district court reviewed the charges and each of the terms of the plea agreement and asked Baramdyka questions to ensure that he understood the contents of his plea agreement. This court has held such procedures sufficient to find a knowing and voluntary waiver. *See United States v. Michlin,* 34 F.3d 896, 898–99 (9th Cir.1994). That Baramdyka may have been unaware of the fact that he had an affirmative defense of lack of personal jurisdiction as to count 8 does not alter this analysis. *See United States v. Petty,* 80 F.3d 1384, 1387 (9th Cir.1996) (appeal waiver precluded double jeopardy challenge since factual basis for claim predated waiver); *Johnson,* 67 F.3d at 202 (upholding waiver of appeal even though sentencing law changed following entry of plea); *Rutan,* 956 F.2d at 830 (defendant's assertion that he cannot waive an unknown right "baseless").

█ Based on the foregoing, Baramdyka's waiver of appeal is valid and precludes any direct appeal of his conviction or sentence. However, such a waiver does not include claims of ineffective assistance of counsel brought under 28 U.S.C. § 2255. *United States v. Pruitt,* 32 F.3d 431, 433 (9th Cir. 1994). Accordingly, we must consider the merits of Baramdyka's appeal insofar as they relate to his claims of ineffective assistance of counsel addressed *infra.*

2. *Ineffective Assistance of Counsel*

Whether a defendant received ineffective assistance of counsel is a legal question reviewed *de novo. Sanchez v. United States,* 50 F.3d 1448, 1456 (9th Cir.1995). A defendant claiming ineffective assistance of counsel must demonstrate that (1) counsel's actions were outside the wide range of professionally competent assistance, and (2) that defendant was prejudiced by reason of counsel's actions. *Strickland v. Washington,* 466 U.S. 668, 686–90, 104 S.Ct. 2052, 2064–66, 80 L.Ed.2d 674 (1984). However, to establish such a claim, a petitioner must overcome the "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id.* (citations omitted).

█ A claim of ineffective assistance used to attack the validity of a guilty plea may be sustained where the petitioner establishes that the ineffective performance "affected the outcome of the plea process ... [such] that absent the erroneous advice, he would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

█ Although an ineffective assistance of counsel claim is reviewed *de novo,* the specific bases for such a claim must also be raised before the district court in the first instance. Issues raised for the first time on appeal are reviewed for plain error. *See* Fed.R.Crim.P. 52(b); *United States v. Karterman,* 60 F.3d 576, 579 (9th Cir.1995). Plain error is "clear" or "obvious" error that affects a defendant's substantial rights. *Id.* Claims properly raised before the district court within a § 2255 petition are reviewed *de novo. Calderon v. Prunty,* 59 F.3d 1005, 1008 (9th Cir.1995).

Because Baramdyka failed to argue that his attorney rendered ineffective assistance

of counsel with respect to his claims of double jeopardy and credit for time spent in Chilean custody, we review those claims for plain error. Because Baramdyka raised the question of his counsel's effectiveness in researching and advising him of jurisdictional issues with respect to count 8, we review this claim *de novo*.

### (a) *Double Jeopardy*

Baramdyka's double jeopardy challenge premised upon *United States v. $405,089.23*, 33 F.3d 1210 (9th Cir.1994) has been foreclosed by the Supreme Court's recent decision in *United States v. Ursery*, —— U.S. ——, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996).

Accordingly, assuming without deciding that his counsel was deficient in failing to raise a double jeopardy argument prior to the entry of Baramdyka's guilty plea, such a failure could not have prejudiced Baramdyka's interests and cannot sustain a claim of ineffective assistance of counsel.

### (b) *Credit for Time Spent in Chilean Custody*

Baramdyka has filed a separate habeas corpus petition pursuant to 28 U.S.C. § 2241 that is currently pending before in the District of Colorado challenging the Bureau of Prisons' failure to credit him for time served in Chilean custody. *Baramdyka v. United States Bureau of Prisons*, No. 94-N-1777 (D.Colo.1994).[2] Thus, whether the Baramdyka is entitled to "credit" is not an issue properly before this court. *See United States v. Wilson*, 503 U.S. 329, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992).

■ To the extent that Baramdyka claims that his attorney was ineffective by failing to present further documentation regarding his Chilean custody status and that this failure may have influenced the trial court's sentencing decision, appellant fails to proffer any such documentation nor has he

explained how such documentation might have assisted his case. The record reveals that trial counsel argued that the Chilean custody was a mitigating factor that the trial court should consider in determining the sentence. Further, the plea agreement expressly reserved the defendant's right to raise this issue. Finally, appellant proffers no additional evidence in support of his contention that he was held by Chilean authorities upon the extradition notice rather than separate Chilean charges. There is no evidence to suggest that the district court's finding that Baramdyka was held in Chile on separate charges was in error.

Based on the foregoing, Baramdyka has failed to demonstrate that his counsel was deficient in the way in which he raised the Chilean custody issue with the district court, nor has he established any prejudice therefrom.

### (c) *Ineffective Assistance of Counsel with Respect to Count 8*

■ Under the doctrines of dual criminality and specialty, following extradition to the United States from a foreign country, a criminal defendant may only be prosecuted for conduct considered criminal under the laws of both nations and for offenses specified in the extradition agreement. *United States v. Khan*, 993 F.2d 1368, 1372–73 (9th Cir.1993); *see also United States v. Andonian*, 29 F.3d 1432, 1434–35 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995) (describing doctrine of speciality).

Although the government argued that Baramdyka was extradited on all four counts in its brief to the trial court, it now concedes that the Chilean extradition order permitted prosecution of counts 1 and 2 only. Both parties further agree that jurisdiction for a conviction on count 8 is waivable pursuant to the terms of the U.S. treaty with Chile.[3]

---

**2.** During oral argument, appellant's counsel indicated that Baramdyka has been at least partially successful in his petition before the Colorado court in obtaining time for credit spent in Chilean custody.

**3.** Article VII of the U.S. Treaty with Chile provides: "No person surrendered by either of the

high contracting parties to the other shall, without his consent, freely granted and publicly declared by him, be triable or tried or be punished for any crime or offense committed prior to his extradition, other than that for which he was delivered up, until he shall have had an opportu-

There is also no dispute that, absent a valid waiver, the doctrine of specialty would have prohibited the government's prosecution of Baramdyka for count 8.[4] Thus, the only issue relevant to this appeal is whether Baramdyka received effective assistance of counsel with respect to count 8 of the indictment.

■ The record of the plea agreement and colloquy contain no reference to the relinquishment of a jurisdictional defense. Indeed, both the government and the trial court were under the erroneous impression that Baramdyka was extradited on count 8 when all parties now concede that he was not. Under these circumstances, we cannot find that Baramdyka's waiver of this jurisdictional defense was knowing or voluntary. Trial counsel's failure to determine this fact from the record of extradition constitutes deficient performance.

■ The more difficult issue is whether Baramdyka has established prejudice from this error. Baramdyka alleges that had he known of this defense, he would not have pled guilty to count 8. However, Baramdyka does *not* contend that but for his counsel's deficient performance he would have proceeded to trial. Instead, he suggests that knowledge of this defense would have placed him in a better bargaining position with the government.[5]

Baramdyka asks that we reverse his conviction on count 8 and dismiss that count or, in the alternative, allow him to withdraw his plea and then let him decide if he wishes to pursue further plea negotiations or proceed to trial.

Although dismissal was the remedy ordered in *Khan*, 993 F.2d at 1375, Kahn was tried and convicted following a jury trial. This case is distinguishable because it resulted in a plea agreement whereby the government agreed to dismiss a more serious charge upon which Baramdyka *was* extradit-ed (count 2) in exchange for Baramdyka's guilty plea to count 8.

The government points out that the number four defendant, Donald Henthorn, proceeded to trial and received a sentence of ten years' imprisonment, consecutive to a 5 year sentence for a separate conspiracy in Texas, to be followed by five years consecutive probation. The government also argues, and appellant does not dispute, that the plea agreement effectively lowered the maximum penalty Baramdyka faced by conviction from 40 to 25 years. Thus, the government contends that Baramdyka cannot establish prejudice because he received significant benefits from his plea agreement.

We are unaware of any authority to support the proposition that a criminal defendant may establish prejudice under *Strickland* and *Hill* when his counsel fails to identify a viable defense as to one count of an indictment when his conviction on another, more serious count is valid and other, valid counts are dismissed. Clearly, had Baramdyka been charged with and pled guilty to count 8 alone, his petition would have merited relief. *See United States v. Kelly*, 62 F.3d 1215 (9th Cir.1995) (granting habeas corpus relief on ineffective assistance of counsel claim where defendant pled guilty to ex-felon in possession of a firearm not knowing that his right to possess weapons had been restored by state law).

Although Baramdyka could not be prosecuted for count 8 absent his knowing and voluntary consent, he has failed to demonstrate that he would have gone to trial but for this error. However, even broadly construing the *Hill* standard to encompass more than simply claims of a desire to go to trial, Baramdyka has also failed to demonstrate that he would have received a better plea agreement had he known of his jurisdictional defense to count 8. Any increased bargaining power is entirely speculative and unlikely in

nity of returning to the country from which he was surrendered."

**4.** *See Khan*, 993 F.2d at 1371–1375. There is also no dispute that the district court's conclusion that Baramdyka lacked standing to contest jurisdiction was in error. *Id.*

**5.** Although Baramdyka also argues that the district court erred in denying his request for an evidentiary hearing on his § 2255 petition, he fails to explain what, if any, evidence or testimony he would present at such a hearing. Thus, there is no need for an evidentiary hearing. *See* 28 U.S.C. § 2255; *United States v. Espinoza*, 866 F.2d 1067, 1069 (9th Cir.1988).

this case given the seriousness of the charges and defendant's role as a leader of the organization. Baramdyka's counsel succeeded in substantially reducing the sentence that Baramdyka would have likely received had he gone to trial.

■ Finally, even if Baramdyka established prejudice he could not obtain a dismissal of count 8 while preserving the benefits of his plea agreement as to count 1. A successful petitioner is entitled to the remedy which would put him "back in the position he would have been in if the Sixth Amendment violation had not occurred." *United States v. Blaylock*, 20 F.3d 1458, 1468 (9th Cir.1993). To place Baramdyka in the position he would have been in had his counsel informed him of his jurisdictional defense to counts 3 and 8 would require a set-aside of the entire plea agreement, with Baramdyka again facing the prospect of a 40 year sentence on counts 1 and 2. We find that such a result would not place Baramdyka in a better position than he is in today.[6] Accordingly, Baramdyka has failed to establish the requisite prejudice to sustain his claim of ineffective assistance of counsel.

## Conclusion

Based on the foregoing, the decisions of the district court on the direct appeal and appeal from the denial of habeas corpus are AFFIRMED.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

I agree that Baramdyka's ineffective assistance of counsel claims, his double jeopardy claim, and his claim on direct appeal that the district court erred by failing to reduce his sentence for time served in Chile have all either been waived or lack merit. My disagreement with the majority is limited only to the disposition of Count 8 in his habeas appeal.

I would vacate Baramdyka's conviction and five-year probationary sentence because in my view, Chile has not waived *its* rights

under the United States–Chilean extradition treaty, nor under the doctrines of specialty and dual criminality incorporated in that treaty, to preclude the United States from prosecuting Baramdyka on that count. Because, as a matter of treaty, the United States was barred from prosecuting Count 8, I respectfully dissent from part of the court's opinion.

"As a matter of international comity, the doctrine of specialty prohibits the requesting nation from prosecuting the extradited individual for any offense other than that for which the surrendering state agreed to extradite." *United States v. Khan*, 993 F.2d 1368, 1373 (9th Cir.1993) (citations, internal quotations omitted). In *Securities Exchange and Commission v. Eurobond Exchange, Ltd.*, 13 F.3d 1334 (9th Cir.1994), this court held that the specialty defense is one of personal, rather than subject matter jurisdiction, and further held that a defendant who had failed to raise the defense in his answer had waived it. *Id.* at 1337. Even though the defendant had waived his own rights, this court nonetheless went on to consider whether the Swiss government, which had extradited the appellant in that case, would object to the institution of civil proceedings against him. Noting that "the protection [of the rule of specialty] exists only to the extent that the surrendering country wishes," *id.* (quoting *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir.) (per curiam), *cert. denied*, 479 U.S. 1009, 107 S.Ct. 652, 93 L.Ed.2d 707 (1986)), we took pains to observe that the Swiss had explicitly represented to the United States that they would not object if the United States instituted civil proceedings against the appellant. As a result, we were able safely to conclude that "as a matter of international comity a trial in this civil matter will not offend the Swiss." *Id.* We further noted that in *Van Cauwenberghe v. Biard*, 486 U.S. 517, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988) the Supreme Court had observed that "[i]n the absence of an explicit agreement obligating the United States to protect the extradited person from the burdens of a civil suit, we believe that there is little potential that the

---

6. Thus, while we agree with the dissent's analysis of extradition law, the dissent fails to explain how such a result is procedurally possible given

the defendant's waiver of appeal and the absence of prejudice due to the nature of the plea agreement reached.

extraditing state ... will view the mere conduct of a private civil trial as a breach of an obligation by the United States not to abuse the extradition process." *Id.* at 525, 108 S.Ct. at 1951. Relying on *Biard*, we thus concluded that "[h]ere, there is no question of an abuse of the extradition process on the part of the United States where the Swiss have made known their belief that the Treaty does not apply to this action." *Eurobond*, 13 F.3d at 1337.

This case is clearly distinguishable from *Eurobond*. Here, there is nothing in the record which suggests that Chile has surrendered its right to prevent the United States from prosecuting Baramdyka on Count 8. To the contrary, there is evidence in the record suggesting that Chile *would* in fact object: Chile specifically declined this country's request to prosecute Baramdyka on Count 8. Accordingly, it is difficult to see how Chile will interpret the United States government's decision to prosecute Baramdyka on Count 8, and this court's decision to affirm that conviction, as anything other than "an abuse of the extradition process on the part of the United States," *Eurobond*, 13 F.3d at 1337, and as a breach of the treaty.

This court has repeatedly emphasized the importance of ensuring the continued vitality of the specialty doctrine. In *United States v. Andonian*, 29 F.3d 1432 (9th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 938, 130 L.Ed.2d 883 (1995), we noted that "[t]he doctrine is based on principles of international comity: *to protect its own citizens in prosecutions abroad*, the United States guarantees that it will honor limitations placed on prosecutions in the United States. Our concern is with ensuring that the obligations of the requesting nation are satisfied." *Id.* at 1435 (citations omitted) (emphasis added).[1] Similarly, in *Najohn, supra*, we noted that "preservation of the institution of extradition requires that the petitioning state live up to whatever promises it made in order to obtain extradition." *Najohn*, 785 F.2d at 1422.

In my view, by failing to set aside Baramdyka's conviction on Count 8 we unnecessarily undermine these principles. Not only will we potentially inhibit the United States' ability to "protect its own citizens in prosecutions abroad" in future cases, but we will also unnecessarily provide Chile and other countries with reason to demur in future cases in which the United States requests the extradition of other major drug dealers. Accordingly, I would grant Baramdyka's section 2255 petition to set aside his conviction on Count 8.

---

**1.** We emphasized in *Andonian* that "[a]n extradited person ... may be tried for a crime other than that for which he was surrendered, *if the asylum country consents.*" *Id.* (citations, internal quotations omitted) (emphasis added by *Andonian*).