**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CRISTOBAL RODRIGUEZ BENITEZ,
*Petitioner-Appellant,*

v.

SYLVIA GARCIA, Warden,
*Respondent-Appellee.*

No. 04-56231

D.C. No.
CV-02-00489-DMS

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, District Judge, Presiding

Argued and Submitted
July 13, 2005—Pasadena, California

Filed January 22, 2007
Amended February 8, 2007

Before: Jerome Farris, Dorothy W. Nelson, and
Richard C. Tallman, Circuit Judges.

Per Curiam Opinion

**COUNSEL**

Barbara Strickland, San Diego, California, for the appellant.

Matthew Mulford, Deputy Attorney General, San Diego, California, for the appellee.

## ORDER

The opinion filed January 22, 2007, is amended as follows:

Slip opinion, page 880, last sentence of the second paragraph is deleted and replaced with:

> We therefore reverse the district court's denial of Benitez's habeas petition.

Slip opinion, page 887, section IV, paragraph [10] is deleted and replaced with:

> Benitez's indeterminate life sentence was the result of an objectively unreasonable decision by the California courts. We therefore reverse the district court's denial of Benitez's habeas petition. On remand, the district court shall grant Benitez a conditional writ of habeas corpus directing that he be released from custody unless the State of California begins re-sentencing proceedings against him within 180 days or as extended by the district court as reasonably necessary.

> Upon re-sentencing, the sentencing limitation in the Venezuelan extradition order must be honored to the extent that it is authorized by the treaty language. The treaty says nothing about sentences for a specific term of years. Therefore, upon re-sentencing the California court may sentence Benitez to any term of years consistent with California law, but not to a life sentence.

## OPINION

PER CURIAM:

Cristobal Rodriguez Benitez was arrested in Venezuela and extradited to the United States. Benitez was tried and con-

victed of murder and sentenced to an indeterminate sentence of fifteen years to life (in addition to four years for the use of a firearm). Benitez petitioned for a writ of habeas corpus, arguing that his sentence could not exceed thirty years because of a sentence limitation contained in the extradition decree from the Supreme Court of Venezuela and the Venezuelan Ministry of Foreign Affairs. The district court denied his petition; Benitez appealed. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253(c).

Where the provisions of the extradition treaty so provide, the surrendering country may condition extradition of the fugitive on punishment limitations. The Supreme Court has clearly established that the extraditing country's expectations must be respected if they are within that country's rights under the extradition treaty. As was its right under the U.S.-Venezuela extradition treaty, Venezuela made clear its expectation that upon extradition Benitez would not be sentenced to a potential life sentence. The state court's decision not to enforce Venezuela's expectation was objectively unreasonable. We therefore reverse the district court's denial of Benitez's habeas petition.

## I

Benitez, a Mexican citizen, was convicted of murdering a man involved in an altercation with Benitez's brother in San Diego, California. After the shooting, Benitez fled to Venezuela. On June 25, 1997, the United States requested that pursuant to the U.S.-Venezuela extradition treaty Venezuela extradite Benitez to face charges in California. The extradition treaty provides that:

> [T]he Contracting Parties reserve the right to decline to grant extradition for crimes punishable by death and life imprisonment. Nevertheless, the Executive Authority of each of the Contracting Parties shall have the power to grant extradition for such crimes

upon the receipt of satisfactory assurances that in case of conviction the death penalty or imprisonment for life will not be inflicted.

Treaty of Extradition, Jan. 19-21, 1922, U.S.-Venez., Art. IV, 43 Stat. 1698, T.S. No. 675.

On June 25, 1997, the Venezuelan Ministry of Foreign Affairs — upon receiving the request from the United States to extradite Benitez — contacted the U.S. Embassy and asked for information related to the sentence Benitez might face if convicted in an American court. On November 6, 1997, the U.S. Embassy responded that under California law "if convicted of murder, and if murder in the first degree is found, Cristobal Rodriguez Benitez would receive a sentence of incarceration of 25 years to life." The Ministry indicated to the Venezuelan Supreme Court that the response meant that "in principle" Benitez would not be subject to a sentence of greater than thirty years.

On August 17, 1998, the Supreme Court of Venezuela approved the extradition of Benitez, but stated that if an American court convicts Benitez it "shall not . . . impose[ ] a penalty involving [the] death penalty or life imprisonment or punishment depriving his freedom for more than thirty years." The Ministry of Foreign Affairs in Venezuela received this decision and communicated to the United States that Benitez's extradition was "conditioned to the understanding that [Benitez] will not be sentenced to . . . life in prison or incarceration for more than thirty (30) years." Benitez was extradited from Venezuela to the United States on August 28, 1998.

On November 5, 1998, the San Diego County District Attorney filed an information alleging that Benitez committed murder and personally used a firearm in violation of California Penal Code § 12022.5(a). On July 16, 1999, about the time that Benitez's trial was to commence, the Venezuelan

Embassy wrote to the United States Department of Justice stating its concern that the sentence Benitez faced "may violate the provisions of the Extradition Treaty" between the United States and Venezuela and might also violate "the conditions established in the sentence of the Supreme Court of Venezuela which approved the extradition request presented by the Government of the United States."

Benitez raised this issue at trial in California state court without success. The day before he was to be sentenced, the United States Department of State faxed a letter to the District Attorney of San Diego County indicating that even though the State Department did "not believe the Office of the District Attorney is required to make such a recommendation," the Department of State still believed it would be wise if Benitez were not issued a life sentence. Benitez was given an indeterminate sentence of fifteen years to life with an enhancement for the personal use of a firearm. At the sentencing hearing, the state trial court indicated that Benitez's argument that the sentence violated the terms of his extradition was not ripe for review.

Benitez's state habeas petitions were denied. The federal magistrate judge determined that Benitez's petition challenging his sentence had merit, but was not ripe because Benitez might not be forced to serve jail time exceeding thirty years. The district court decided that the dispute was ripe but that Benitez failed to demonstrate that his sentence violated clearly established federal law.

## II

**[1]** We must first decide whether Benitez's petition is ripe for review or instead will only be ripe if he is not released after thirty years. Benitez's extradition was conditioned upon a limitation on what sentence could be *entered* against him as well as what sentence he could *serve*. When the Venezuelan Ministry of Foreign Affairs informed the U.S. Embassy of the

Venezuelan Supreme Court's decision to extradite Benitez, the Ministry indicated that the extradition was "conditioned to the understanding that the aforementioned citizen will *not be sentenced* to death or life in prison or incarceration for more than thirty (30) years." (emphasis added). Additionally, Benitez's extradition decree limited what sentence could be issued as well as what sentence could be served.

**[2]** This dispute therefore turns on the term sentenced, not the term served. It became ripe as soon as the state court entered a sentence of fifteen years to life. *Cf. United States v. Campbell*, 300 F.3d 202, 211 (2d Cir. 2002) (recognizing a difference between extradition terms limiting what sentence could be entered by the receiving state's courts and what sentence the receiving state could force the prisoner to serve).

**[3]** The disparity between the extradition decree's limitation and the sentence imposed caused Benitez an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Although courts are reluctant to find standing when an injury will result only if a future event transpires, *see City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983), here standing is not premised on the intervention of a future event. Instead, unless some future event intervenes (which we have no reason to believe is probable or even likely), Benitez will be imprisoned for life. He has therefore proven a sufficient possibility of "future injury." *Central Delta Water Agency v. United States*, 306 F.3d 938, 947 (9th Cir. 2002).[1]

---

[1]Finding that a petitioner like Benitez could not challenge the latter portions of his sentence also would be highly problematic from a pragmatic perspective. It would require courts to address each portion of a sentence only once it is absolutely clear that a prisoner would serve that portion.

## III

### A

**[4]** We review the district court's denial of a writ of habeas corpus de novo. *Martinez-Villareal v. Lewis*, 80 F.3d 1301, 1305 (9th Cir. 1996). Because Benitez filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA provides the governing standard of review. *See Woodford v. Garceau*, 538 U.S. 202, 207 (2003). For a writ to issue we must find that the state court's decision was either contrary to or an objectively unreasonable application of "clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see also Williams v. Taylor*, 529 U.S. 362, 404-05, 410 (2000).

Benitez concentrates on demonstrating that his sentence resulted from the state court's objectively unreasonable application of clearly established federal law as determined by the Supreme Court. Under AEDPA that can occur where the state court unreasonably applies the correct legal standard to the facts of the defendant's case or where the state court either unreasonably extends or unreasonably fails to extend an existing legal principle into a new context. *See id.* at 407. We too focus on that portion of the habeas standard.

**[5]** The clearly established federal law controlling this case comes from *United States v. Rauscher*, 119 U.S. 407 (1886), and *Johnson v. Browne*, 205 U.S. 309 (1907), which set forth the principles of interpretation and international comity relevant to enforcing extradition treaties and the terms of specific extraditions. *Rauscher* and *Browne* established that the extraditing country's expectations regarding punishment limitations must be respected if they are within that country's rights under the extradition treaty.[2] *Rauscher* and *Browne* are also

---

[2] These decisions are the American judicial basis for a principle known as the doctrine of specialty, which is now incorporated into the express

clear that these expectations and rights are interpreted expansively in the unique context of foreign extradition relationships, which depend upon trust and mutual respect.

In *Rauscher*, the Supreme Court implied into the United States-Great Britain extradition treaty a term restricting prosecution of extradited defendants to those charges for which extradition was secured. The Court found that by enumerating only certain crimes as extraditable, the treaty implicitly incorporated the "public law" principle that an extraditing country has the right to decide the grounds of extradition, which bind the receiving country. *See Rauscher*, 119 U.S. at 419-20. Although no express treaty language limited the receiving country's jurisdiction to prosecute extradited defendants, that absence was "met by the manifest scope and object of the treaty itself" — no other interpretation of "solemn public treaties between the great nations of the earth can be sustained by a tribunal called upon to give judicial construction to them." *Id*. at 422; *see also Browne*, 205 U.S. at 317. This interpretive framework was subsequently upheld and applied in *Browne*, which reaffirmed that "it is still most important that a treaty of this nature between sovereignties should be construed in accordance with the highest good faith." *Browne*, 205 U.S. at 321.

**[6]** Additionally, *Rauscher* and *Browne* demonstrate that enforcement of an extradition treaty also entails giving effect

language of most extradition treaties. It provides that an extradited defendant may not be prosecuted "for any offense other than that for which the surrendering country agreed to extradite." *United States v. Andonian*, 29 F.3d 1432, 1434-35 (9th Cir. 1994) (citations and quotations omitted). "The doctrine is based on principles of international comity: to protect its own citizens in prosecutions abroad, the United States guarantees that it will honor limitations placed on prosecutions in the United States. Our concern is with ensuring that the obligations of the requesting nation are satisfied." *Id.* at 1435 (citations omitted). This well-settled doctrine is not at issue here. Benitez was charged with the crime for which Venezuela agreed to extradite him.

to "the processes by which it is to be carried into effect." *Rauscher*, 119 U.S. at 420-21. Most importantly, this means that language in a foreign nation's extradition order invoking provisions of an extradition treaty must be enforced by federal courts. *See Browne*, 205 U.S. at 311-12 (specifically considering the extradition orders of the court of King's Bench in deciding that the defendant had not been extradited on the charge for which he was then imprisoned); *cf. Andonian*, 29 F.3d at 1437 (finding that prosecution for additional counts of money laundering was not outside the scope of a Uruguayan court's extradition order).

[7] Thus, the Supreme Court has clearly established that the expectations of the extraditing country — at least those within its rights, expansively interpreted, under the extradition treaty and expressed in its official extradition order — limit a state's ability to prosecute and sentence the extradited defendant. We must assess whether the state court heeded this in sentencing Benitez.

B

[8] The state court's failure to give effect to the Venezuelan extradition order was an objectively unreasonable application of *Rauscher* and *Browne*, the clearly established Supreme Court precedent. Venezuela had the right to refuse extradition to the United States unless it received assurances that neither a death sentence nor life in prison would be imposed. The thirty-year limitation that Venezuela sought to impose might be enforceable if that condition were agreed to by both countries. We are wary, however, of enforcing extradition conditions that are neither expressly agreed to by both countries nor contemplated by the relevant extradition treaty. A thirty-year limitation is therefore not enforceable. However, Venezuela clearly believed that it was extraditing Benitez on the condition that he not be subject to a life sentence. That limitation must be enforced.

**[9]** *Rauscher* and *Browne* place heavy emphasis on whether the expectations of the extraditing country, as expressed in its extradition orders, are honored. Only by doing so can the "manifest scope and object" of an extradition treaty be honored in the "highest good faith." *See Rauscher*, 119 U.S. at 422; *Browne*, 205 U.S. at 321. Here, that requires that Venezuela's attempt to exercise its rights under the extradition treaty be honored, despite its failure to extract contractually binding assurances from the United States that a life sentence would not be imposed. *Rauscher* and *Browne*, the purpose of the treaty, and the respect due our longstanding extradition relationship with Venezuela call for such an interpretation. The state court's decision otherwise was objectively unreasonable.

## IV

**[10]** Benitez's indeterminate life sentence was the result of an objectively unreasonable decision by the California courts. We therefore reverse the district court's denial of Benitez's habeas petition. On remand, the district court shall grant Benitez a conditional writ of habeas corpus directing that he be released from custody unless the State of California begins re-sentencing proceedings against him within 180 days or as extended by the district court as reasonably necessary.

**[11]** Upon re-sentencing, the sentencing limitation in the Venezuelan extradition order must be honored to the extent that it is authorized by the treaty language. The treaty says nothing about sentences for a specific term of years. Therefore, upon re-sentencing the California court may sentence Benitez to any term of years consistent with California law, but not to a life sentence.

REVERSED and REMANDED.